KELLEY DRYE & WARREN LLP
  Lauri A. Mazzuchetti (*pro hac vice*)
  Elizabeth D. Silver (*pro hac vice*)
One Jefferson Road, 2nd Floor
Parsippany, New Jersey 07054
Telephone:   (973) 503-5900
Facsimile:   (973) 503-5950
lmazzuchetti@kelleydrye.com
esilver@kelleydrye.com

KELLEY DRYE & WARREN LLP
  Lee S. Brenner (State Bar No. 180235)
  Catherine D. Lee (State Bar No. 258550)
10100 Santa Monica Boulevard
Twenty-Third Floor
Los Angeles, CA 90067-4008
Telephone:   (310) 712-6100
Facsimile:   (310) 712-6199
lbrenner@kelleydrye.com
clee@kelleydrye.com

Attorneys for Defendants Essendant Inc.,
(f/k/a United Stationers Inc.), Essendant Co.
(f/k/a United Stationers Supply Co.), and
Lagasse, LLC (now known as Essendant Co.)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| Craftwood II, Inc., a California corporation, dba Bay Hardware; Craftwood Lumber Company, an Illinois corporation,<br><br>                    Plaintiffs,<br><br>     v.<br><br>United Stationers Inc., a Delaware corporation, dba Essendant and Essend∧nt; United Stationers Supply Co., an Illinois corporation, dba Essendant and Essend∧nt; Lagasse LLC, an Illinois corporation, dba LagasseSweet, Essendant and Essend∧nt,<br><br>                    Defendants. | No. SACV 8:15-cv-00704-JLS-DFM<br><br>Hon. Josephine L. Staton<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STAY ACTION**<br><br>[*Declaration of Lauri A. Mazzuchetti, Declaration of Kaitlin Corcoran, Declaration of Jon Phillips, Request for Judicial Notice, and [Proposed] Order Filed Concurrently Herewith*]<br><br>Date:            September 11, 2015<br>Time:            2:30 p.m.<br>Courtroom:    10A |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 11, 2015 at 2:30 p.m., or as soon thereafter as counsel may be heard before the Honorable Josephine L. Staton, in the courtroom located at the Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Courtroom 10A, Santa Ana, California 92701-4516, Defendants Essendant Inc. (f/k/a United Stationers Inc.), Essendant Co. (f/k/a United Stationers Supply Co.), and Lagasse LLC (collectively, "Defendants") will and hereby do move this Court to stay the action until: (1) the United States Supreme Court issues a decision in *Campbell-Ewald v. Gomez*, 135 S. Ct. 2311 (2015), (2) the United States Supreme Court issues a decision in *Spokeo, Inc. v. Robins*, 135 S. Ct. 1892 (2015), and (3) the Federal Communications Commission ("FCC" or the "Commission") rules on Defendants' petition for retroactive waiver of the opt-out notice requirement as to solicited facsimiles.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the accompanying Declarations of Lauri A. Mazzuchetti, Jon Phillips and Kaitlin Corcoran, the Request for Judicial Notice, and all other papers and pleadings on file in this action, and upon such other evidence and arguments as may be presented at the hearing on this matter.

/ / /

/ / /

/ / /

DEFENDANTS' MOTION TO STAY ACTION

1    This motion is made following the conference of counsel pursuant to Local

2    Rule 7-3, which took place on June 12, 2015 and July 6, 2015.

3    DATED:  July 13, 2015            KELLEY DRYE & WARREN LLP

4                                    Lauri A. Mazzuchetti
                                     Lee S. Brenner
5                                    Elizabeth D. Silver
                                     Catherine D. Lee
6

7                                    By   */s/ Lauri A. Mazzuchetti*
                                         _____
8                                        Lauri A. Mazzuchetti
                                     Attorneys for Defendants Essendant Inc.,
9                                    (f/k/a United Stationers Inc.), Essendant Co.
                                     (f/k/a United Stationers Supply Co.), and
10                                   Lagasse, LLC (now known as Essendant Co.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO STAY ACTION

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................... 1

II. FACTUAL BACKGROUND & PROCEDURAL HISTORY .......................... 3

    A.    The TCPA And The Legislative and Regulatory History Of

           Solicited Fax Advertisements .............................................. 3

    B.    Plaintiffs' Claims Against Defendants and The Procedural

           History of This Action .......................................................... 8

           1.    Plaintiffs' Complaint ................................................ 8

           2.    On May 20, 2015, Defendants Served Plaintiffs With An

                Offer Of Judgment And Checks Providing Them

                Complete Relief ....................................................... 10

           3.    Essendant Facsimiles ............................................... 11

           4.    On July 9, 2015, Defendants Served Plaintiffs With An

                Offer Of Judgment ................................................... 12

    C.    Proceedings Before The FCC ............................................... 12

    D.    *Spokeo* And *Campbell-Ewald* ............................................. 13

III. THIS MOTION TO STAY SHOULD BE GRANTED .................................. 14

    A.    The District Court Has Discretion To Grant A Stay ......................... 14

    B.    A Stay Should Be Granted Pending The Supreme Court's

           Resolution Of *Campbell-Ewald* and *Spokeo* ..................................... 16

    C.    A Stay Should Be Granted Pending The FCC's Resolution Of

           The United Petition ............................................................. 20

IV. CONCLUSION .......................................................................................... 24

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Page(s)**

3

**Cases**

4

*Boise v. ACE USA, Inc.,*

5

    No. 15-cv-21264, 2015 WL 4077433 (S.D. Fla. July 6, 2015) ...................... 17, 19

6

*Bouaphakeo v. Tyson Foods, Inc.,*

7

    765 F.3d 791 (8th Cir. 2014) (Bean, J., dissenting) ............................................ 13

8

*Campbell-Ewald Co. v. Gomez,*

9

    No. 14-14-857 .......................................................................................*passim*

10

*Campbell-Ewald, Co. v. Gomez,*

11

    No. 14-857 (U.S. Jan. 16, 2015), 2015 WL 241891 ..................................... 13, 16

12

*Charvat v. EchoStar Satellite, LLC,*

13

    630 F.3d 459 (6th Cir. 2010) ............................................................................ 21

14

*Craftwood II, Inc. v. Tomy Int'l, Inc.,*

15

    No. SA CV 12-1710 DOC (C.D. Cal. filed Sept. 14, 2012) ................................. 9

16

*Craftwood Lumber Co. v. Auburn Armature, Inc.,*

17

    No. 1:14-CV-06868 (N.D. Ill. filed Sept. 5, 2014) ............................................. 9

18

*Craftwood Lumber Co. v. CMT (USA), Inc.,*

19

    No. 1:14-CV-06864 (N.D. Ill. filed Sept. 5, 2014) ............................................. 9

20

*Craftwood Lumber Co. v. Interline Brands, Inc.,*

21

    No. 11-cv-4462, 2011 WL 9162512 (N.D. Ill filed June 30, 2011) ...................... 9

22

*Craftwood Lumber Co. v. Seaboard Int'l Forest Prods., LLC,*

23

    No. 1:13-CV-07433 (N.D. Ill. filed Oct. 16, 2013) ............................................. 9

24

*Craftwood Lumber Co. v. Senco Brands, Inc.,*

25

    No. 1:14-CV-06866 (N.D. Ill. filed Sept. 5, 2014) ......................................... 9, 22

26

*Etzel v. Hooters of Am., LLC,*

27

    No. 1:15-cv-01055 (N.D. Ga. June 26, 2015), ECF No. 17 ............................... 17

28

*Fauley v. Royal Cain USA Inc.*,

    No. 1:15-cv-02170 (N.D. Ill. May 22, 2015) (Bucklo, J.), ECF No.

    23 ...................................................................................................... 17, 18

*Forman v. Data Transfer, Inc.*,

    164 F.R.D. 400 (E.D. Pa. 1995) ......................................................... 21

*G.M. Sign, Inc. v. Brink's Mfg. Co.*,

    No. 09 C 5528, 2011 WL 248511 (N.D. Ill. Jan. 25, 2011) ................... 21

*Gannon v. Network Tel. Svs., Inc.*,

    No. CV 12-9777-RGK, 2013 WL 2450199 (C.D. Cal. June 5, 2013) ................ 20

*Gomez v. Campbell-Ewald Co.*,

    768 F.3d 871 (9th Cir. 2014), *cert. granted*, 83 U.S.L.W. 3637 (U.S.

    May 18, 2015).......................................................................... 2, 15, 16

*Gusman v. Comcast Corp.*,

    No. 13CV1049-GPC (DHB), 2014 WL 2115472 (S.D. Cal. May 21,

    2014) ...................................................................................................... 15

*Junk Fax Prevention Act of 2005*,

    CG Docket Nos. 02-278, 05-338, Order, 29 FCC Red 13998, FCC

    14-164 (Oct. 30, 2014) ...................................................................*passim*

*Junk Fax Prevention Act of 2005*,

    CG Docket Nos. 02-278, 05-338, Report and Order and Third Order

    on Reconsideration, 21 FCC Rcd. 3787 (April 6, 2006).................................... 6, 7

*Kenro, Inc. v. Fax Daily, Inc.*,

    962 F. Supp. 1162 (S.D. Ind. 1997) ..................................................... 21

*Kirchner v. Shred-It USA, Inc.*,

    No. 2:14-cv-01437 (E.D. Cal. June 18, 2015), ECF No. 59 ............... 19

*Klein v. Verizon Comm'ns., Inc.*,

    920 F. Supp. 2d 670 (E.D. Va. 2013).................................................. 17

*Klein v. Verizon Comm'ns, Inc.*,
   No. 14-1735 (4th Cir. June 17, 2015), ECF No. 34 ............................................... 17

*Larson v. Trans Union, LLC*,
   No. 3:12-cv-05726 (N.D. Cal. Jun. 26, 2015), ECF No. 86............................ 14, 19

*Levya v. Certified Grocers of Cal., Ltd.*,
   593 F.2d 857 (9th Cir. 1979) ................................................................................ 14

*Mais v. Gulf Coast Collection Bureau, Inc.*,
   768 F.3d 1110 (11th Cir. 2014) ............................................................................ 21

*McElroy v. Tracy Unified Sch. Dist.*,
   No. 2:07-CV-00086-MCE-EFB, 2007 WL 1674000 (E.D. Cal. June
   8, 2007) ........................................................................................................... 15, 22

*Mey v. Frontier Comm'ns. Corp.*,
   No. 3:13-cv-01191 (D. Conn. May 26, 2015), ECF No. 118.............................. 17

*Mey v. Yellowstone Capital, LLC*,
   No. 1:15-cv-00854 (S.D.N.Y. Jun. 18, 2015) ECF No. 21 ................................. 17

*In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*,
   No. 1:13md2493 (N.D.W. Va. June 17, 2015), ECF No. 459 ....................... 17, 19

*Munoz v. PHH Corp.*,
   No. 08-0759, 2011 WL 4048708 (E.D. Cal. Sept. 9, 2011).................... 14, 15, 18

*Nat'l Ass'n of Broadcasters v. FCC*,
   569 F.3d 416 (D.C. Cir. 2009)............................................................................... 21

*Physicians Healthsource, Inc. v. Masimo Corp.*,
   No. 8:14-cv-00001-JVS-AN (C.D. Cal. May 22, 2014), ECF No. 47 ................ 22

*Physicians Healthsource, Inc. v. Stryker Sales Corp.*,
   65 F.Supp.3d 482 (W.D. Mich. 2015) ................................................................. 22

*Ramirez v. Trans Union, LLC*,
   No. 3:12-cv-00632 (N.D. Cal. June 22, 2015), ECF No. 184.............................. 19

*Robins v. Spokeo, Inc.*,

    742 F.3d 409 (9th Cir. 2014), *cert. granted*, 135 S. Ct. 1892 (2015) .............. 2, 18

*Robins v. Spokeo, Inc.*,

    No. CV10-05306 ODW, 2011 WL 597867 (C.D. Cal. Jan. 27, 2011) ................ 18

*Rules and Regulations Implementing the Telephone Consumer*

    *Protection Act of 1991*,

    CC Docket No. 92-90, Report and Order, 18 FCC Rcd. 14014 (July

    3, 2003) ........................................................................................................ 4

*Shipley v. United States*,

    608 F.3d 770 (9th Cir. 1979) ............................................................... 22

*Spokeo, Inc. v. Robins*,

    No. 13-1339 (U.S. May 1, 2014), 2014 WL 1802228 .................................. 13, 18

*Syed v. M-I, LLC*,

    No. 1:14-cv-00742-WBS-BAM (E.D. Cal. May 29, 2015), ECF No.

    69 ................................................................................................................ 19

*Syntek Semiconductor Co. v. Microchip Tech., Inc.*,

    307 F.3d 775 (9th Cir. 2002) ........................................................... 15, 20

*Tanasi v. First Alliance Bank*,

    No. 14-1389 (2d Cir. June 30, 2015), ECF No. 90 ....................................... 17, 20

*Tyson Foods, Inc. v. Bouaphakeo*,

    No. 14-1146 (U.S. Mar. 19, 2015), 2015 WL 1285369 ............................... 13, 14

*Vandervort v. Balboa Capital Corp.*,

    287 F.R.D. 554 (C.D. Cal. 2012) ........................................................... 20

*Williams v. Elephant Ins. Co.*,

    No. 1:15-cv-00119 (E.D. Va. May 27, 2015), ECF No. 39 .......................... 17, 19

**Statutes**

15 U.S.C. § 1692k(a)(2) ........................................................................... 18

Administrative Orders Review Act, 28 U.S.C. §§ 2341–2353 ................................. 22

Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*..................................................18

Junk Fax Prevention Act of 2005, Pub.L. No. 109–21, 119 Stat. 359

(2005)................................................................................................5-6, 12

*Rules & Regulations Implementing the Telephone Consumer Protection*

*Act of 1991,* CC Docket No. 92-90, Report and Order, 7 FCC Rcd.

8752 .................................................................................................3-6, 12

Telephone Consumer Protection Act, 47 U.S.C. § 227 (1991) .........................*passim*

**Other Authorities**

47 C.F.R. § 1.3 .................................................................................................21

47 C.F.R. § 64.1200(a)(4).................................................................................4, 8

47 C.F.R. § 64.1200(f)(15) ..................................................................................5

68 Fed. Reg. 143, 167-68, ¶¶ 131-32 (July 25, 2003) ..........................................4

Federal Rule of Civil Procedure 68 ...............................................................*passim*

Federal Rule 23 ............................................................................................13, 14

Minute Order, *Etzel*, No. 1:15-cv-01055, ECF No. 17.........................................19

Report and Order, 7 FCC Rcd. 8752 (Oct. 16, 1992)............................................4

Rule 7.1 .............................................................................................................11

Rule 23(b)(3).................................................................................................13, 20

S. Rep. No. 109–76 (2005) .............................................................................5, 6

DEFENDANTS' MOTION TO STAY ACTION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Plaintiffs Craftwood II, Inc. ("Craftwood II") and Craftwood Lumber Company ("CLC") (collectively "Plaintiffs") are serial filers of class actions alleging claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (1991) ("TCPA").  In this case, Plaintiffs claim that, beginning on March 3, 2015, Defendants began sending to them facsimile advertisements that failed to include a proper opt-out notice.  Plaintiffs identify 13 alleged advertising facsimiles that they claim were sent to them by Defendants.

Plaintiffs' own pleading confirms that the challenged faxes all contained opt-out language stating that: "If you have received this fax in error, please accept our apologies and call toll free 877.385.4440 to be removed from our list."[1]  Plaintiffs do not allege that they were confused by this notice, or that they contacted Defendants and yet continued to receive unwanted faxes.  Rather, Plaintiffs waited for nearly two months, until they received a total of thirteen (13) alleged facsimile advertisements, and filed this lawsuit on May 1, 2105 to seek for themselves $500 (or $1,500 if trebled) in statutory damages per fax—for a maximum recovery of $19,500.  In response to the Complaint, Defendants have served two Offers of Judgment on Plaintiffs, both offering them complete relief on their individual claims.  Plaintiffs rejected Defendant's first Offer of Judgment, and have not yet responded to the second.

---

[1] There is no dispute that the challenged faxes, attached as exhibits to the Complaint (Dkt. No. 1) (the "Complaint"), contain the quoted opt-out language.  *See, e.g.*, Compl., Ex. 1 at 1.  According to Plaintiffs, however, Defendants should be held liable (to the tune of $15 million dollars) even if faxes were sent with prior express permission and/or despite the fact that the faxes at issue contained an opt-out notice that substantially complied with the TCPA.

1    In the last two months, the United States Supreme Court has granted
2    *certiorari* in two cases that will result in controlling precedent over threshold issues
3    that are present in this suit.  First, in *Campbell-Ewald Co. v. Gomez*, No. 14-14-857,
4    the Supreme Court will decide whether a named plaintiff can proceed with TCPA
5    claims, individually or on behalf of a class, following receipt of an offer of judgment
6    providing for full individual relief.  *See Gomez v. Campbell-Ewald Co.*, 768 F.3d
7    871, 875-76 (9th Cir. 2014), *cert. granted*, 83 U.S.L.W. 3637 (U.S. May 18, 2015)
8    (No. 14-857).  Second, in *Spokeo, Inc. v. Robins*, No. 13-1339, the Supreme Court
9    will decide whether a plaintiff who suffers no concrete harm can satisfy injury-in-
10   fact standing based only on a violation of a federal statute.  *See Robins v. Spokeo,*
11   *Inc.,* 742 F.3d 409, 412 (9th Cir. 2014), *cert. granted*, 135 S. Ct. 1892 (2015).  As
12   further detailed below, the outcomes of both *Campbell-Ewald* and *Spokeo*, to be
13   decided during the Supreme Court's next term, will directly impact this case and this
14   Court's subject-matter jurisdiction.  Defendants respectfully ask this Court to stay
15   the case, following the lead of numerous courts granting stays of TCPA class
16   actions, pending these very decisions by the Supreme Court.  A stay would prevent
17   this Court and the parties from expending substantial time and resources litigating
18   this action despite a potential lack of jurisdiction, and would cause no prejudice to
19   Plaintiffs, particularly because discovery has yet to begin.
20   While the pendency of these two important Supreme Court cases provides this
21   Court with sufficient basis to enter a stay, proceedings that are presently pending
22   before the FCC provide an additional basis to grant a stay.  Specifically, on
23   October 30, 2014, the FCC issued an order granting retroactive waivers to dozens of
24   petitioners as to the TCPA's opt-out notice requirement as applied to facsimiles sent
25   with consent.  *See* Request for Judicial Notice ("RJN"), Ex. A (*Rules and*
26   *Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk*
27   *Fax Prevention Act of 2005*, CG Docket Nos. 02-278, 05-338, Order, 29 FCC Red
28   13998, FCC 14-164 (Oct. 30, 2014) (the "*Solicited Fax Order*")) at 14010-11,

¶¶ 26-28.  The FCC stated that granting the waivers served the public interest because "confusion . . . left some businesses potentially subject to significant damage awards under the TCPA[] . . . ."  *Id.* ¶ 27.  Notably, the FCC invited similarly situated parties to seek retroactive waivers as well.  *Id.* ¶ 30.  Within days of being served with Plaintiffs' Complaint, Defendants submitted a petition for retroactive waiver to the FCC, seeking waiver of the opt-out notice requirements for those recipients who had given prior express consent to receive the faxes.  *See* RJN, Ex. B (*In the Matter of Petition of United Stationers Inc., United Stationers Supply Co. and Lagasse LLC for Retroactive Waiver of 47 C.F.R. § 64.1200(a)(4)(iv)*, CG Docket Nos. 02-278, 05-338, Petition for Retroactive Waiver (May 18, 2015) (the "*United Petition*")).  If the FCC grants the *United Petition*, any plaintiff or putative class member who consented to receive the faxes at issue would have no TCPA claim against any of Defendants.

For all of the above reasons, as more fully described herein, Defendants respectfully request a stay of this action until: (1) the Supreme Court issues a decision in *Campbell-Ewald* and (2) in *Spokeo*, and (3) the FCC rules on the *United Petition*.  Pursuant to the conference of counsel, Plaintiffs oppose a stay.

## II.

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

### A.   The TCPA And The Legislative and Regulatory History Of Solicited Fax Advertisements

In 1991, Congress enacted the TCPA to address the growing number of telephone marketing calls and certain calling practices thought to be an invasion of consumer privacy.  Pub. L. No. 102-243, § 2, 105 Stat. 2394, 2394-95.  In relevant part, the TCPA makes it unlawful "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement."  47 U.S.C. § 227(b)(1)(C).  The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of

1   any property, goods, or services which is transmitted to any person without that

2   person's express invitation or permission, in writing or otherwise." *Id.* § 277(a)(5);

3   47 C.F.R. § 64.1200(f)(15).  The TCPA provides for a private cause of action to

4   recover the greater of the actual monetary loss caused or $500 in statutory damages

5   for each violation; a court may in its discretion treble these damages if it finds that

6   the violation was willful.  47 U.S.C. § 227(b)(3).

7        In 1992, the FCC adopted rules implementing the TCPA, including

8   restrictions on the transmission of unsolicited fax ads by fax machines.  *See* RJN,

9   Ex. C (Rules and Regulations Implementing the Telephone Consumer Protection

10  Act of 1991, CC Docket No. 92-90, Report and Order, 7 FCC Rcd. 8752 (Oct. 16,

11  1992) ("the *1992 TCPA Order*")) at 8753-54, ¶ 2; *see also* 47 C.F.R.

12  § 64.1200(a)(4).  In the *1992 TCPA Order*, the FCC concluded that an established

13  business relationship ("EBR") with the recipient can evidence the necessary

14  invitation or permission of the recipient to receive the facsimile advertisement.  *See*

15  *id.* at 8769-71, ¶¶ 31, 34.[2]

16       In 2003, the Commission announced that it would reverse its previous

17  conclusion that an established business relationship provides companies with the

18  necessary prior express permission to send faxes to their customers.  Final Rule, 68

19  Fed. Reg. 143, 167-68, ¶¶ 131-32 (July 25, 2003)).  Under the proposed 2003 rule, a

20  business would be permitted to advertise by fax only with the prior express

21  permission of the fax recipient, which would have to have been in writing and

22  include the recipient's signature and facsimile number, and could not be in the form

23

24  _____

25  [2] The FCC later stated that "[t]he [*1992 TCPA Order*] makes clear that the existence
    of an established business relationship establishes consent to receive telephone
    facsimile advertisement transmissions . . . .  In addition . . . we believe it is

26  appropriate to treat the issue of consent in any complaint regarding unsolicited
    facsimile advertisements on a case-by-case basis.  For these reasons, we reject the

27  proposed definition."  *See* RJN, Ex. D (Rules and Regulations Implementing the
    Telephone Consumer Protection Act of 1991, CC Docket No. 92-90, Memorandum

28  Opinion and Order, 10 FCC Rcd. 12391 (July 26,1995)) at 12408-09, ¶ 37.

of an opt-out provision.  *See* RJN, Ex. E (*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CC Docket No. 92-90, Report and Order, 18 FCC Rcd. 14014 (July 3, 2003)) at 14019, 14039-40, 14126, 14128-29, ¶¶ 5, 37, 187, 191.

In response to the FCC's 2003 proposed rule on this issue, the Senate Committee on Commerce, Science, and Transportation (the "Senate Committee") stated that the FCC's proposed rule revisions "effectively eliminate[ed] the [existing business relationship] exception to the general prohibition on unsolicited fax advertisements."  S. Rep. No. 109–76, at 3 (2005).  The 2003 FCC rule revisions were repeatedly suspended and, ultimately, were rendered moot by the enactment of the Junk Fax Prevention Act of 2005, Pub.L. No. 109–21, 119 Stat. 359 (2005) ("JFPA").  S. Rep. No. 109–76, at 4-7.

The JFPA amended the TCPA to permit businesses and other entities to send, without the recipient's prior express consent, advertisement facsimiles to recipients with whom they enjoy an established business relationship.  Pub.L. No. 109–21, § 2, 119 Stat. 359, at 359-360; *see* 47 U.S.C. § 227(b)(1)(C).  The Senate Committee's report on the JFPA expressly stated that the purpose of the bill was to "[c]reate a limited statutory exception to the current prohibition against the faxing of unsolicited advertisements to individuals without their 'prior express invitation or permission' by permitting such transmission by senders of commercial faxes to those with whom they have an [EBR]."  S. Rep. No. 109–76, at 1.

Although the Senate Committee expressed its view that the established business relationship exception was an appropriate exception to the ban on unsolicited facsimile advertisements, the Senate Committee also determined that it was necessary to provide recipients with the ability to stop future unwanted facsimiles sent pursuant to such relationships.  *Id*. at 7.  Consequently, the Senate Committee proposed adding a requirement that every unsolicited facsimile advertisement contain an opt-out notice that gives the recipient the ability to stop

future unwanted facsimile solicitations and that senders of such advertisements provide recipients with a cost-free mechanism to stop future unsolicited facsimiles. *Id.*[3]  Notably, when Congress added the opt-out notice provisions to section 227(b) of the TCPA in the JFPA, it imposed such requirements on "unsolicited advertisements," but not other fax advertisements.  *See* 47 U.S.C. § 227(b)(2)(D).

The JFPA also amended the TCPA's definition of "unsolicited advertisement" to mean a facsimile advertisement that "is transmitted to any person without that person's prior express invitation or permission, ***in writing or otherwise.***"  *Id.* § 227(a)(5) (emphasis added).  The Senate Committee's report states that "[t]he effect of this amendment would be to statutorily prohibit the FCC from promulgating a rule that would require prior express permission to be secured only in writing."  S. Rep. No. 109–76, at 11-12.  In other words, consent in writing is not required.

In 2006, the FCC amended its rules concerning fax transmissions in response to the JFPA.  *See* RJN, Ex. F (*Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, CG Docket Nos. 02-278, 05-338, Report and Order and Third Order on Reconsideration, 21 FCC Rcd. 3787 (April 6, 2006) (the "*Junk Fax Order*")) at 3788, ¶ 1.  Among other things, in the *Junk Fax Order*, the FCC ruled that "[p]rior express invitation or

---

[3] According to the Senate Committee, the "established business relationship" exception permits "legitimate businesses to do business with their established customers and other persons with whom they have an established relationship without the burden of collecting prior written permission to send these recipients commercial faxes." *Id.* at 6.  The Senate Committee report went on to explain that abandoning the FCC's 1992 rule in favor of its proposed 2003 rules, would have "significant consequences." *Id.*  Specifically, the cost and effort of compliance could place significant burdens on some businesses, particularly those small businesses that rely heavily on the efficiency and effectiveness of facsimile machines. *Id.*  Noting that businesses had "appropriately relied" on the 1992 rules over the past decade, the Senate report concluded that "[i]f the revised rules go into effect, the previously legitimate practices will be immediately unlawful, and unsuspecting or uninformed businesses may be subject to unforeseen and costly litigation unrelated to legitimate consumer protection aims." *Id.*

DEFENDANTS' MOTION TO STAY ACTION

permission may be given by oral or written means, including electronic methods."
*Id.* at 3811, ¶ 45.  The FCC also purported to adopt a rule providing that a fax advertisement "sent to a recipient that has provided prior express invitation or permission to the sender must include an opt-out notice."  *Id.*, App. A, ¶ 5 (codified as amended at 47 C.F.R. § 64.1200(a)(4)(iv)).  The *Junk Fax Order*, however, also contained conflicting language in a footnote that "the opt-out notice requirement only applies to communications that constitute ***unsolicited*** advertisements."  *Id.* at 3810 n.154 (emphasis added).  Numerous parties filed petitions challenging the FCC's rule applying the opt-out notice requirement to solicited advertising faxes. *See, e.g.*, *Solicited Fax Order* at 14002-03, ¶¶ 10-11

When the FCC issued the *Solicited Fax Order* on October 30, 2014, it opined that the rules adopted in 2006 apply not only to unsolicited fax advertisements, but also to ***solicited*** fax advertisements (*i.e.*, fax advertisements sent with the recipients' prior express invitation or permission).  *See id.* at 14000, 14002, 14005, 14011, ¶¶ 5, 9, 15, 29.  The FCC denied the petitioners' request for a declaratory ruling that section 227(b) of the TCPA could not be the statutory basis for that requirement, and concluded that the FCC had authority to adopt the rule in question.  *Id.* at 14004-06, ¶¶ 14, 19.  At the same time, the FCC granted retroactive waivers to the petitioners, who were facing lawsuits alleging that they had violated section 64.1200(a)(4)(iv) by failing to include the required "opt-out" language in advertising faxes.  *Id.* at 14005, 14008, ¶¶ 15, 19, 22.  The FCC determined that, because of confusion among affected parties regarding whether the opt-out language was required in solicited fax advertisements, good cause existed for a retroactive waiver, and that a waiver was also in the public interest.  *Id.* at 14010-12, ¶¶ 26-28, 30.

Specifically, the FCC acknowledged that the "inconsistent footnote" in the *Junk Fax Order*, which stated that the opt-out notice requirement applied only to ***unsolicited*** advertisements, "caused confusion or misplaced confidence regarding

the applicability of the [opt-out notice] requirement." *Id.* at 14009, 14011, ¶¶ 24, 28.  The FCC also recognized that "the lack of explicit notice" that the FCC contemplated requiring opt-out notices on solicited fax advertisements "may have contributed to confusion or misplaced confidence." *Id.* at 14010, ¶ 25 (citing *Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, CG Docket Nos. 02-278, 05-338, Notice of Proposed Rulemaking and Order, 20 FCC Rcd 19758, 19769-70 ¶¶ 29-29 (Dec. 9, 2005) (attached as RJN, Ex. G)).  The FCC concluded that "this specific combination of factors presumptively establishes good cause for retroactive waiver of the rule." *Id.* at 14010, ¶ 26.

The FCC likewise determined that granting the requested retroactive waivers would serve the public interest, noting that "the TCPA's legislative history makes clear our responsibility to balance legitimate business and consumer interests." *Id.* at 14010, ¶ 27.  Examining the record set forth by the petitioners, the FCC found it would be "unjust or inequitable" to subject parties to "potentially substantial damages," given the confusion and misplaced confidence about the rule's applicability. *Id.* at 14010-11, ¶¶ 27, 28.  The Commission granted a retroactive waiver to the petitioning parties to ensure that the confusion did not result in "inadvertent violations" of the TCPA. *Id.* at 14011, ¶ 27.  In addition, the Commission extended its waiver for a period of six months after the *Solicited Fax Order*, until April 30, 2015. *Id.* at 14011, ¶ 29.  The Commission then stated that "[o]ther, similarly situated parties may also seek waivers such as those granted in the [*Solicited Fax Order*]," and directed that it "expect[s] that parties will make every effort to file [petitions for waiver] within six months of the release of this Order." *Id.* at 14012, ¶ 30.

**B.  Plaintiffs' Claims Against Defendants and The Procedural History of This Action**

**1.  Plaintiffs' Complaint**

Plaintiffs filed their Complaint on May 1, 2015, alleging "upon . . . information and belief" that Defendants sent them a total of 13 fax advertisements between March 3 and April 30, 2015, without obtaining their prior express invitation or permission and without certain opt-out language, in violation of the TCPA. Compl. ¶ 15.  Craftwood II claims that it was sent ten (10) alleged fax advertisements, which are attached to the Complaint as Exhibits 1, 2, 4, 5, 8, 9, 10, 11, 12 and 13, on its facsimile telephone number ending 4054.  *Id.* at ¶ 5.  CLC claims that it was sent three (3) alleged fax advertisements, which are attached to the Complaint as Exhibits 3, 6 and 7, on its facsimile telephone number ending 2805.

Every exhibit to the Complaint demonstrates that the faxes at issue contained the following opt-out disclosure: "If you have received this fax in error, please accept our apologies and call toll free 877.385.4440 to be removed from our list." Compl., Exs. 1-13.  Plaintiffs do not allege that they were confused by Defendants' opt-out notice.  Nor do Plaintiffs allege that they tried to opt-out, but continued to receive faxes from Defendants.  Rather, Plaintiffs are serial TCPA litigants that know perfectly well how to opt-out of unwanted faxes.[4]

Based upon these allegations, Plaintiffs' Complaint asserts a single claim for relief under § 227(b) of the TCPA.  *Id.* ¶¶ 29-34.  In addition to bringing their own individual claims, Plaintiffs seek to represent a class of:

> all persons and entities that were subscribers of facsimile telephone numbers to which material that discusses, describes, or promotes the property, goods or services of Defendants, or any of them, was sent via facsimile (to 10 or more facsimile telephone numbers) on or after

---

[4] In addition to this action, Plaintiffs have filed at least six complaints asserting TCPA claims in connection with faxes:  *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-cv-4462, 2011 WL 9162512 (N.D. Ill filed June 30, 2011); *Craftwood II, Inc. v. Tomy Int'l, Inc.*, No. SA CV 12-1710 DOC (ANx) (C.D. Cal. filed Sept. 14, 2012); *Craftwood Lumber Co. v. Seaboard Int'l Forest Prods., LLC*, No. 1:13-CV-07433 (N.D. Ill. filed Oct. 16, 2013); *Craftwood Lumber Co. v. Auburn Armature, Inc.*, No. 1:14-CV-06868 (N.D. Ill. filed Sept. 5, 2014); *Craftwood Lumber Co. v. CMT (USA), Inc.*, No. 1:14-CV-06864 (N.D. Ill. filed Sept. 5, 2014); and *Craftwood Lumber Co. v. Senco Brands, Inc.*, No. 1:14-CV-06866 (N.D. Ill. filed Sept. 5, 2014).

1    May 1, 2011, including, without limitation, the faxes attached as
2    Exhibits 1 through 13.

3    *Id.* ¶ 20.

4    Plaintiffs contend, in the "Prayer for Relief" of their Complaint, that they seek

5    for themselves and the "Plaintiffs Class" "an award of statutory damages for each

6    violation of the [TCPA] and/or the FCC regulations in an amount not less than $5

7    million, and the trebling of such statutory damages." *Id.*, Prayer for Relief ¶ 4.

8    **2.    On May 20, 2015, Defendants Served Plaintiffs With An Offer Of**

9    **Judgment And Checks Providing Them Complete Relief**

10   On May 20, 2015, Defendants served on Plaintiffs an Offer of Judgment (the

11   "May 20 Offer") under Federal Rule of Civil Procedure 68, offering them complete

12   relief on their individual claims. Declaration of Lauri A. Mazzuchetti ("Mazzuchetti

13   Decl.") ¶ 3. Specifically, Defendants offered Plaintiffs $22,000 "inclusive of

14   interest and attorney's fees" on their claims of 13 faxes in violation of the TCPA

15   (and provided settlement checks totaling that amount to each), as well as injunctive

16   relief in the form of an injunction "prohibiting Defendants from transmitting

17   facsimile advertisements to either of the Plaintiffs." Mazzuchetti Decl., Ex. A at 2.

18   This offer encompasses all of the relief that would be due to Plaintiffs if the Court

19   granted every form of relief sought in the Complaint.[5] Even at treble the statutory

---

[5] In addition to individual injunctive relief—"(1) that Defendants be required to stop
sending facsimile advertisements in violation of the TCPA"—Plaintiffs demand the
following injunctive relief on behalf of a putative class: "(2) that Defendants deliver
to Plaintiffs records of every facsimile advertisement that is the subject of this
lawsuit; (3) that Defendants adopt compliance programs to ensure that none of their
employees send any further facsimile advertisements in violation of the TCPA; (4)
that defendants provide notice to all persons whom Defendants have sent facsimile
advertisements in violation of the TCPA; and (5) that Defendants post on their
websites warnings regarding their past violations of the TCPA." Compl. ¶ 33. The
May 20 Offer, which offers to enjoin Defendants from sending Plaintiffs facsimile
advertisements, satisfies the first and third requested relief, as to the named
Plaintiffs. The remaining requested relief (numbers 2, 4, and 5) were permissibly
left out of the May 20 Offer because they do not provide the named Plaintiffs, who
already have knowledge of the purported violations, with any additional relief.

DEFENDANTS' MOTION TO STAY ACTION

1  penalties (13 x $1,500 = $19,500), Defendants' Offer exceeds the amount that

2  Plaintiffs could hope to recover in this action.[6]

3      Plaintiffs reacted to Defendants' Offer by filing a Protective Motion for Class

4  Certification (Dkt. No. 12) on May 21, 2015 at 7:21 p.m., and by rejecting the May

5  20 Offer on June 3, 2015.  Mazzuchetti Decl. ¶¶ 4-5.  During a meet-and-confer held

6  on July 6, 2015, pursuant to Local Rule 7-3, Plaintiffs' counsel also questioned,

7  among other things, whether Defendants offered "complete relief," claiming that

8  Plaintiffs may have received more facsimiles than those specifically identified in the

9  Complaint, and questioning whether the May 20 Offer of Judgment contained a

10 provision for prejudgment interest.  Mazzuchetti Decl., ¶ 7.

11      **3.      Essendant Facsimiles**

12      Essendant is a leading wholesaler of cleaning, facilities maintenance, and

13 foodservice products.[7]  Many of Essendant's customers operate out of warehouses

14 and distribution facilities and rely on facsimiles as the primary means of

15 communicating with Essendant.  Phillips Decl., ¶ 4.  Customers place orders for

16 product, and receive order confirmations and other important business information

17 from Essendant, by facsimile.  *Id.*

18      While Essendant's investigation into Plaintiffs' allegations is ongoing, it has

19 confirmed that Essendant has obtained prior express consent to send advertising

20 facsimiles, including those sent from May 1, 2011 through the present.  Phillips

21 Decl., ¶ 6.  In many instances, Essendant has obtained such consent in writing.  *Id.*

22 Essendant has other records and evidence of such consent, and believes that it will

23

24 [6] Even if the Court were to find a TCPA violation, Defendants deny that there would
   be any basis to find that violation willful, and the amount of the Offer or settlement
25 checks should not be construed as an admission otherwise.

26
27 [7] On June 29, 2015, defendant Lagasse, LLC ("Lagasse") merged into Defendant
   Essendant Co. (f/k/a United Stationers Supply Co.), its former parent corporation.
   Defs.' Rule 7.1 Disclosure Statement at 2; *see also* Declaration of Jon Phillips
28 ("Phillips Decl.") 3.

1    be able to gather additional evidence of consent, if necessary, through discovery in

2    this case if it should proceed. *Id.*

3       Plaintiffs have identified thirteen (13) specific facsimiles that Defendants

4    allegedly sent to them in violation of the TCPA. *See* Complaint, Exs. 1-13.

5    Defendants dispute whether all of the thirteen (13) facsimiles, which are attached to

6    Plaintiffs' Complaint, constitute an advertisement under the TCPA. Declaration of

7    Kaitlin Corcoran ("Corcoran Decl."), ¶ 4. Defendants have reviewed fax records

8    and confirmed that a total of fourteen facsimiles, at the most, have been sent to

9    Plaintiffs since May 1, 2011. *Id.* ¶ 5. The facsimile not identified in the Complaint

10    was sent to telephone number 847-831-2805 on March 3, 2015, and did not contain

11    any advertisement. *Id.* Plaintiffs do not assert any claim for this fax.

12       Defendants have also confirmed that the first date on which a facsimile was

13    sent to Plaintiffs was March 3, 2015, and the last date was on April 30, 2015. *Id.*

14    ¶ 6. Plaintiffs do not allege that they made any attempt to contact Defendants to

15    request that Defendants cease sending facsimiles to Plaintiffs.

16       **4.**      **On July 10, 2015, Defendants Served Plaintiffs With An Offer Of**

17            **Judgment**

18       During counsel's extensive meet and confer, Plaintiffs' counsel questioned

19    whether the May 20, 2015 Offer of Judgment provided relief sufficient to moot

20    Plaintiffs' claims, specifically questioning whether the Offer of Judgment contained

21    a provision for prejudgment interest. Mazzuchetti Decl., ¶ 7. While Defendants'

22    position is that the May 20, 2015 Offer of Judgment provided Plaintiffs with

23    complete relief, nonetheless, on July 10, 2015, Defendants served Plaintiffs with a

24    another Offer of Judgment ("July 10 Offer"), offering judgment in the amount of

25    $25,000, plus costs and prejudgment interest. *Id.*, ¶ 8, Ex. B.

26    **C.**     **Proceedings Before The FCC**

27       Defendants were served with the Complaint on May 7 and 8, 2015,

28    respectively. Stipulation to Extend Time to Respond (Dkt. No. 11) at 1. Just days

later, on May 18, 2015, Defendants filed a Petition with the FCC seeking a retroactive waiver under the FCC's *Solicited Fax Order*. *See* Request for Judicial Notice ("RJN"), Ex. A. On May 29, 2015, the FCC issued a Public Notice seeking comment on the *United Petition* (and the petition of other companies)—comments and reply comments were due on June 12 and June 19, 2015, respectively. *See* RJN, Ex. H (*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, CG Docket Nos. 02-278, 05-338, Consumer and Governmental Affairs Bureau Seeks Comment on Petitions Concerning the Commission's Rule on Opt-Out Notices On Fax Advertisements, DA 15-646 (May 29, 2015)) at 1 n.2. Comments and reply comments were filed with the FCC, and the *United Petition* (as well as numerous other similar petitions) remains pending for decision by the FCC. RJN, Ex. I.

### D. *Spokeo* And *Campbell-Ewald*

On April 27, 2015, the Supreme Court granted certiorari in *Spokeo* to address whether a federal statute, like the TCPA, can create Article III standing by simply authorizing a remedy for a statutory violation. *See* Pet. for Writ of Cert. at i, *Spokeo, Inc. v. Robins,* No. 13-1339 (U.S. May 1, 2014), 2014 WL 1802228, at *i. If the Court concludes that a mere violation of such a statute without further proof of injury does not confer Article III standing, Plaintiffs and putative class members would lack standing to pursue their claims unless they suffered actual injury.

On May 18, 2015, the Supreme Court granted certiorari in *Campbell-Ewald* to decide: (1) "[w]hether a case becomes moot, and thus beyond the judicial power of Article III, when the plaintiff receives an offer of complete relief on his claim," and (2) "[w]hether the answer to the first question is any different when the plaintiff has asserted a class claim under Federal Rule 23, but receives an offer of complete relief before any class is certified." Pet. for Writ of Cert. at i, *Campbell-Ewald, Co. v. Gomez,* No. 14-857 (U.S. Jan. 16, 2015), 2015 WL 241891, at *i. Should the Supreme Court rule in favor of the *Campbell-Ewald* petitioners, named plaintiffs in

TCPA class actions who receive valid Rule 68 offers – like Plaintiffs here – will not be able to proceed individually or as class representatives, requiring dismissal of both their individual and class claims as moot.[8]

### III.

### THIS MOTION TO STAY SHOULD BE GRANTED

The Court should enter a stay like the many district courts before it.  Since the Supreme Court granted certiorari in *Campbell-Ewald* on May 18, 2015, at least eight district courts and two circuit courts have issued stays in putative TCPA class actions pending decision by the Supreme Court in *Campbell-Ewald*.  Further, at least eight district courts have granted stays in light of *Spokeo*.  Finally, dozens of courts presiding over TCPA fax ad cases have granted stays pending guidance from the FCC, including in one of Plaintiff's other TCPA cases.

### A.    The District Court Has Discretion To Grant A Stay

"A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay on an action before it, pending resolution of independent proceedings which bear upon the case." *Levya v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).  A district court weighs the following three factors when deciding a motion to stay:

---

[8] On June 11, 2015, the Supreme Court granted the petition for certiorari in *Tyson Foods, Inc. v. Bouaphakeo*, No. 14-1146, a third case that will address issues relevant to this putative class action.  *See Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 804-05 (8th Cir. 2014) (Bean, J., dissenting) (finding it inappropriate that "each purported class member, damaged or not, will receive a pro-rata portion of the jury's one-figure verdict"), *cert. granted*, 83 U.S.L.W. 3765 (U.S. June 8, 2015) (14-1146).  In *Tyson*, the Supreme Court will consider "[w]hether a class action may be certified or maintained under Rule 23(b)(3) . . . when the class contains hundreds of members who were not injured and have no legal right to any damages."  Pet. for Writ of Cert. at i, *Tyson Foods, Inc. v. Bouaphakeo*, No. 14-1146 (U.S. Mar. 19, 2015), 2015 WL 1285369, at *i.  Plaintiffs' class claims may require this Court to determine, among other Rule 23 considerations, whether unharmed individuals are included in the proposed class.  While the pendency of *Campbell-Ewald* and *Spokeo* provide plentiful justification for a stay, the forthcoming Rule 23 certification guidance in *Tyson* further weighs in favor of a stay.  *See* Order at 1, 14, *Larson v. Trans Union, LLC*, No. 3:12-cv-05726 (N.D. Cal. Jun. 26, 2015), ECF No. 86 (granting a stay pending a decision in *Spokeo*, and citing the grant of certiorari in *Tyson* as a factor counseling in favor of a stay).

> (1) the possible damage which may result from granting the stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of simplifying or complicating issues, proof, and questions of law which could be expected to result from a stay.

*Munoz v. PHH Corp.*, No. 08-0759, 2011 WL 4048708, at *2 (E.D. Cal. Sept. 9, 2011) (citing *CMAX, Inc. v. Hall*, 300 F.3d 265, 268 (9th Cir. 1962)).  Mere "delay after several years of discovery and after the conclusion of briefing on the motion for class certification…is not damage resulting from a stay."  *Id.*  To the contrary, "a stay will reduce the additional expenditure of the parties' time and resources, which is of particular importance if the Supreme Court's decision ultimately disposes of this action."  *Id.* at *4.  The pendency of the decisions in *Campbell-Ewald* and in *Spokeo* satisfies the *Munoz* factors.

Similarly, the doctrine of primary jurisdiction is committed to the sound discretion of the court when "protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme."  *Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775, 781 (9th Cir. 2002).  The doctrine is a "prudential" one where the court determines that a claim implicates technical and policy questions that should be first addressed by the relevant agency with regulatory authority over the relevant industry rather than by the courts. *Gusman v. Comcast Corp.*, No. 13CV1049-GPC (DHB), 2014 WL 2115472, at *2 (S.D. Cal. May 21, 2014).  Courts consider the following four factors when determining whether to grant a stay under the doctrine:

> (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration.

*Syntek*, 307 F.3d at 781.  "[S]tay pending the outcome of an administrative proceeding that might render the relief sought in district court unnecessary is a proper exercise of the court's discretion."  *McElroy v. Tracy Unified Sch. Dist.*,

No. 2:07-CV-00086-MCE-EFB, 2007 WL 1674000, at *1 (E.D. Cal. June 8, 2007). Consideration of the *Syntek* factors favors a stay pending the FCC's decision.

**B.    A Stay Should Be Granted Pending The Supreme Court's Resolution Of *Campbell-Ewald* and *Spokeo***

The *Campbell-Ewald* petition raises the question of whether a defendant can defeat a class action by offering complete relief in a Rule 68 offer of judgment to the named plaintiff before the court certifies a class.  *Campbell-Ewald* involves a class action brought under the TCPA against a national marketing firm over a text message campaign. 768 F.3d at 873.  Before the class was certified, the defendant made a Rule 68 offer to pay the named plaintiff $1,503 for each unsolicited text message allegedly received. *Id.* at 874.  The defendant argued that its offer should have ended the TCPA case because it fully satisfied the named plaintiff's claim. *Id*. In other words, the Rule 68 offer mooted the plaintiff's claim because the plaintiff has "won" and there is no longer anything left for the court to adjudicate. *Id.* However, the Ninth Circuit held that an unaccepted Rule 68 offer of judgment − for the full amount of the named plaintiff's individual claim before class certification − does **not** moot a class action. *Id.*

Not only did the Ninth Circuit's decision contravene basic Article III principles, warranting the Supreme Court's review, *see* Petition for a Writ of Certiorari at 2-3, *Campbell-Ewald Co.*, No. 14-857 (U.S. Jan. 16, 2015), 2015 WL 241891, at *2-3, but its reasoning incentivizes plaintiffs' lawyers to encourage their clients to reject full-relief settlement offers just to keep extortionate class actions alive, *see* Br. for U.S. Chamber of Commerce et al. as Amici Curiae Supporting Pet. at 3-4, *Campbell-Ewald Co.*, No. 14-857 (U.S. Feb. 19, 2015), 2015 WL 763984, at *3-4.  There is no question that the *Campbell-Ewald Co.* decision pending before the Supreme Court may have a dispositive impact upon the present action.

Plaintiffs' "placeholder" Protective Motion for Class Certification affords them no refuge from the Supreme Court's ruling because the certified question

focuses not on the timing of a certification motion, but rather on whether the plaintiff "receives an offer of complete relief before any class is certified."  Pet. for Writ of Cert. at i, *Campbell-Ewald*, No. 14-857, 2015 WL 241891, at *i.  If the Supreme Court resolves *Campbell-Ewald* in favor of the petitioner, this entire case would become moot and subject to dismissal because Defendants made the Offer of full relief to Plaintiffs, before class certification.  *See* Mazzuchetti Decl. ¶ 3.[9]

This past month, the Court of Appeals for the Fourth Circuit stayed its review of the Rule 68 mootness question, otherwise set for oral argument this summer, pending *Campbell-Ewald*.  Order at 2, *Klein v. Verizon Comm'ns, Inc.*, No. 14-1735 (4th Cir. June 17, 2015), ECF No. 34; *see also Klein v. Verizon Comm'ns., Inc.*, 920 F. Supp. 2d 670, 679 (E.D. Va. 2013) (holding that an unaccepted Rule 68 offer of judgment before certification does not moot putative class claims).  Similarly, the Court of Appeals for the Second Circuit granted a stay so that the appellant might file a petition for writ of *certiorari* on the same issues being considered in *Campbell-Ewald*.  *Tanasi v. First Alliance Bank*, No. 14-1389 (2d Cir. June 30, 2015), ECF No. 90.

Likewise, at least eight putative TCPA class actions have been stayed by district courts in recognition of *Campbell-Ewald*'s dispositive effect.  *See Boise v. ACE USA, Inc.*, No. 15-cv-21264, 2015 WL 4077433, at *5-6 (S.D. Fla. July 6, 2015); Minute Order, *Etzel v. Hooters of Am., LLC*, No. 1:15-cv-01055 (N.D. Ga. June 26, 2015), ECF No. 17; Order at 1, *Mey v. Yellowstone Capital, LLC*, No. 1:15-cv-00854 (S.D.N.Y. Jun. 18, 2015) ECF No. 21; Order Staying Case at 1-2, *In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, No. 1:13md2493 (N.D.W. Va. June 17, 2015), ECF No. 459; Order at 1, *Williams v. Elephant Ins. Co.*, No. 1:15-cv-00119 (E.D. Va. May 27, 2015), ECF No. 39; Minute Order, *Fauley v.*

---

[9] And while not dispositive or even relevant, Defendants made an offer mooting Plaintiffs' claims before Plaintiffs moved for class certification.  Mazzuchetti Decl., ¶¶ 3-4.

1  *Royal Cain USA Inc.*, No. 1:15-cv-02170 (N.D. Ill. May 22, 2015) (Bucklo, J.), ECF

2  No. 23; *see also* Order at 1-2, *Charvat v. Nat'l Holdings Corp.*, No. 2:14-cv-2205

3  (S.D. Ohio Jun. 5, 2015), ECF No. 34 (staying *sua sponte* a TCPA matter after

4  certifying to the Sixth Circuit the same questions raised in *Campbell-Ewald*); Order,

5  *Mey v. Frontier Comm'ns. Corp.*, No. 3:13-cv-01191 (D. Conn. May 26, 2015),

6  ECF No. 118 (stating that the court intends to issue an order staying or

7  administratively closing case following a *sua sponte* telephonic status conference

8  discussing *Campbell-Ewald*).

9       In so ordering a stay, Judge Bucklo of the Northern District of Illinois

10  reasoned that:

11       It is not clear that the [*Campbell-Ewald*] decision will
         decide whether the offer of judgment in this case renders

12       this case moot . . . . ***It is possible that the Supreme Court
         will reach the issue, however, and I see no prejudice in***

13       ***holding this case in abeyance.  Discovery is expensive
         and in my experience, it is mostly the attorneys who***

14       ***benefit from these cases.***

15  Minute Order at 1, *Fauley*, No. 1:15-cv-02170, ECF No. 23 (emphasis added).  This

16  succinct order encapsulates why the three *Munoz* factors—Plaintiffs' possible

17  damage, Defendants' hardship, and the orderly course of justice—weigh in favor of

18  staying this action.

19       Likewise, the *Spokeo* case raises the question of whether a plaintiff who

20  suffers no concrete harm from a statutory violation lacks Article III standing.  In

21  *Spokeo*, the plaintiff brought a claim under the Fair Credit Reporting Act, 15 U.S.C.

22  § 1681 *et seq.*, which, similar to the TCPA, provides for statutory damages.  *Robins

23  v. Spokeo, Inc.*, No. CV10-05306 ODW (AGRx), 2011 WL 597867, at *1 (C.D. Cal.

24  Jan. 27, 2011); *see* 15 U.S.C. § 1692k(a)(2) (authorizing $1,000 per plaintiff).  The

25  issue was whether Congress may confer Article III standing upon a plaintiff who

26  suffers no concrete harm, by authorizing a private right of action based on a bare

27  violation of a federal statute.  *Id.* at *1.  The District Court for the Central District of

28  California dismissed the complaint, holding that the plaintiff had failed to allege an

injury-in-fact because he had not alleged any "actual or imminent harm." *Id.* at *1-2.  The Ninth Circuit, however, reversed and remanded, emphasizing that a mere statutory injury-in-law – standing alone – was sufficient to satisfy Article III's injury-in-fact requirement, even when the plaintiff did not sustain ***any*** tangible harm.  *Robins*, 742 F.3d at 413-14.  The petitioner rightly argued that a decision in *Spokeo* would resolve similar issues under other federal statutes, including the TCPA.  *See* Petition for a Writ of Certiorari at 16, *Spokeo*, No. 13-1339 (U.S. May 1, 2014), 2014 WL 1802228, at *16.

This Court should not hesitate in following the decisions of at least eight courts, including four federal courts sitting in California, staying putative class actions given the weight of the prospective decision in *Spokeo*.  *See Boise*, 2015 WL 4077433, at *5-6; Minute Order, *Etzel*, No. 1:15-cv-01055, ECF No. 17; Order at 1, *Larson v. Trans Union, LLC*, No. 3:12-cv-05726 (N.D. Cal. June 26, 2015), ECF No. 86; Order at 1, *Ramirez v. Trans Union, LLC*, No. 3:12-cv-00632 (N.D. Cal. June 22, 2015), ECF No. 184; Stipulation and Order at 1-2, *Kirchner v. Shred-It USA, Inc.*, No. 2:14-cv-01437 (E.D. Cal. June 18, 2015), ECF No. 59; Order Staying Case at 1-2, *In re Monitronics*, No. 1:13md2493, ECF No. 459; Stipulation & Order at 1-2, *Syed v. M-I, LLC*, No. 1:14-cv-00742-WBS-BAM (E.D. Cal. May 29, 2015), ECF No. 69; Order at 1, *Williams*, No. 1:15-cv-00119, ECF No. 39.  If the Supreme Court reverses the Ninth Circuit's decision in *Spokeo*, TCPA plaintiffs—including the Plaintiffs here—will be required to show "injury-in-fact," which Plaintiffs have not alleged in the Complaint.

Forcing Defendants to undergo the expense and time of class discovery pending the resolution of *Campbell-Ewald* and *Spokeo* would severely prejudice Defendants.  Massive costs are involved in class discovery.  Conversely, as discussed above, there is ***no*** damage or hardship resulting from a complete stay of this action pending these decisions.  In fact, granting a stay for a matter of months, and awaiting essential guidance from the Supreme Court on these issues, would

DEFENDANTS' MOTION TO STAY ACTION

1   increase judicial efficiency, conserve resources, avoid superfluous efforts and

2   inconsistent rulings, and promote the orderly progression of the case.  *Cf. Boise*,

3   2015 WL 4077433, at *6 (granting stay, despite Eleventh Circuit precedent rejecting

4   mootness by unaccepted offer of judgment, because months-long "delay," "onerous

5   discovery," and "threshold issues of jurisdiction" "weigh heavily in favor of a

6   stay").  It would be a waste of the parties' resources to engage in significant class

7   discovery on issues later eliminated by the Supreme Court's decision regarding

8   whether injury-in-fact is required here.  Therefore, this Court should stay the instant

9   action until the Supreme Court has issued decisions in both *Campbell-Ewald* and

10  *Spokeo*.

11  **C.     A Stay Should Be Granted Pending The FCC's Resolution Of The *United***

12  ***Petition***

13          Moreover, there is an additional basis for granting a stay in this case.  Like

14  district courts before it, the Court should also stay this action pending the *United*

15  *Petition* under the doctrine of primary jurisdiction because all four factors in *Syntek*

16  are present here:  First, there are issues that need to be resolved by the FCC to

17  determine Defendants' liability, if any.  If the FCC grants Defendants' request for a

18  waiver on solicited faxes, then Defendants will have no liability for faxes sent with

19  the permission of the recipient.  That will impact Plaintiffs' ability to certify a class

20  or, at least, significantly limit the scope of that class and class discovery.  Indeed,

21  despite Plaintiffs' contention to the contrary, and reliance on the technical opt-out

22  requirements, *see* Compl. ¶ 16, the *United Petition*, if granted, will render putative

23  class members' consent to receive Defendants' faxes the most central and

24  determinative issue in the case.

25          In the context of TCPA class action litigation, courts have routinely held that

26  a proposed class is not ascertainable, and not subject to class treatment, where class

27  membership depends on whether a person consented to the challenged

28  communication.  *See, e.g.*, *Gannon v. Network Tel. Svs., Inc.*, No. CV 12-9777-

1   RGK, 2013 WL 2450199, at *2-3 (C.D. Cal. June 5, 2013) (holding that a proposed

2   class defined as recipients of "unauthorized" text messages was not ascertainable);

3   *Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 557 (C.D. Cal. 2012) (holding

4   that a proposed class defined as recipients of "unsolicited" fax advertisements was

5   not ascertainable).

6         Additionally, Plaintiffs would have great difficulty demonstrating that

7   "questions of law or fact common to class members predominate over any questions

8   affecting only individual members." Fed. R. Civ. P. 23(b)(3). If Defendants'

9   Petition is granted, the viability of Plaintiffs' claims will rest entirely on whether the

10   faxes at issue were sent with or without the recipient's express permission. An

11   individualized determination will be required for each class member regarding

12   whether or not they consented to receive the faxes at issue. In light of this

13   inherently individualized issue, which would require countless mini trials for each

14   and every class member, the predominance requirement likely could not be satisfied.

15   *See G.M. Sign, Inc. v. Brink's Mfg. Co.*, No. 09 C 5528, 2011 WL 248511, at *9

16   (N.D. Ill. Jan. 25, 2011) (finding that individualized issues predominated where the

17   court would have been required "to engage in a class-member specific inquiry to

18   determine whether each recipient did indeed give permission or have an established

19   business relationship with Defendant at the pertinent time"); *Kenro, Inc. v. Fax*

20   *Daily, Inc.*, 962 F. Supp. 1162, 1169-70 (S.D. Ind. 1997) (same); *Forman v. Data*

21   *Transfer, Inc.*, 164 F.R.D. 400, 404 (E.D. Pa. 1995) (same)

22         <u>Second</u>, Congress vested the FCC with considerable authority to implement

23   the TCPA. *See* 47 U.S.C. § 227(b)(2) ("The Commission shall prescribe regulations

24   to implement the requirements of this subsection."); *Charvat v. EchoStar Satellite,*

25   *LLC*, 630 F.3d 459, 466-67 (6th Cir. 2010) (explaining that the TCPA gives the

26   FCC interpretative authority over the TCPA and the power to make exemptions).

27   The FCC has exercised that authority by offering to review requests for waivers

28   from all businesses affected by the confusing application of the regulation. *See* 47

C.F.R. § 1.3 (permitting waiver of FCC rules "for good cause shown"); *accord Nat'l Ass'n of Broadcasters v. FCC*, 569 F.3d 416, 426 (D.C. Cir. 2009) ("The Commission has authority under its rules to waive requirements not mandated by statute where strict compliance would not be in the public interest."  (citing § 1.3)). The FCC is best positioned to make a determination as to the construction of the TCPA in each instance, while district courts are not.  *See Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1120 (11th Cir. 2014) ("[D]istrict courts lack jurisdiction to consider claims to the extent they depend on establishing that all or part of an FCC order subject to the [Administrative Orders Review Act, 28 U.S.C. §§ 2341–2353] is 'wrong as a matter of law' or is 'otherwise invalid.'").  *But see Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F.Supp.3d 482, 497-98 (W.D. Mich. 2015) (assuming incorrectly that the opt-out notice requirements for faxes stem from the TCPA itself, rather than the FCC's rules).  Granting a stay will ensure that the FCC and the courts do not work at cross-purposes.

Third, the TCPA is a comprehensive regulatory scheme governing the sending of unsolicited fax advertisements that applies to Defendants' ability to send faxes to its customers.

Fourth, allowing the FCC to speak first will avoid judicial findings that may later turn out to be at odds with FCC guidance.  Instead of trying to divine how the FCC would resolve the ambiguity, it is appropriate to let FCC's guidance on this issue govern – especially here, where the FCC has requested that similarly situated businesses seek retroactive waivers.

District courts presiding over TCPA fax advertisement cases have granted stays pending guidance from the FCC, including in one of CLC's other TCPA cases impacted by the *Solicited Fax Order*.  *See, e.g.*, Minute Entry, *Craftwood Lumber Co. v. Senco Brands, Inc.*, No. 1:14-CV-06866 (N.D. Ill. Dec. 19, 2014), ECF No. 42 (staying for six months); Order at 2, 4, *Physicians Healthsource, Inc. v. Masimo Corp.*, No. 8:14-cv-00001-JVS-AN (C.D. Cal. May 22, 2014), ECF No. 47;

1   *see* Order at 4, *Masimo Corp.*, No. 8:14-cv-00001-JVS-AN, ECF No. 47 (listing

2   cases).  Moreover, case law strongly supports that it is proper for district courts to

3   stay cases where an administrative proceeding might foreclose the relief in the

4   district court.  *See Shipley v. United States*, 608 F.3d 770, 775 (9th Cir. 1979)

5   (staying case pending final ruling in administrative proceeding); *McElroy v. Tracey*

6   *Unified Sch. Dist.*, No. 2:07-cv-00086-MCE-EFB, 2007 WL 1674000, at *1 (E.D.

7   Cal. June 8, 2007) (same).

8       If this Court denies a stay, Plaintiffs will seek to proceed with class discovery,

9   even though the FCC's ruling on the *United Petition* will likely have a substantial

10  impact on the scope of the potential class and the breadth of class discovery.  This

11  will result in great harm to Defendants.  Conversely, if this Court grants a stay,

12  Plaintiffs will not be harmed.  Additionally, any claim that Plaintiffs may make

13  regarding undue delay is undermined by recent indications that the FCC will resolve

14  this issue soon.  Given the FCC's imminent guidance, there is nothing to be gained

15  and a significant amount to be lost by way of judicial resources and the parties'

16  money, by proceeding without obtaining a definitive ruling on the waiver.

17      Accordingly, this Court should not spend its time and the parties' money to

18  litigate Plaintiff's claim while the FCC considers Defendants' Petition, in deference

19  to agency experience.

20  ///

21  ///

22  ///

23

24

25

26

27

28

# IV.

## <u>CONCLUSION</u>

This case is a classic candidate for a stay.  Once the FCC makes a ruling on Defendants' Petition and the Supreme Court rules in *Campbell-Ewald* and *Spokeo*, those decisions will control this action, and may dictate dismissal.  For all of the reasons above, Defendants respectfully request that the Court grant this motion and stay the present case pending:  (1) the Supreme Court's ruling on *Campbell-Ewald*, (2) the Supreme Court's ruling on *Spokeo*, (3) and final FCC ruling on the *United Petition*.

DATED:  July 13, 2015          KELLEY DRYE & WARREN LLP
                               Lauri A. Mazzuchetti
                               Lee S. Brenner
                               Elizabeth D. Silver
                               Catherine D. Lee

                               By   */s/ Lauri A. Mazzuchetti*
                                   Lauri A. Mazzuchetti
                               Attorneys for Defendants Essendant Inc.,
                               (f/k/a United Stationers Inc.), Essendant Co.
                               (f/k/a United Stationers Supply Co.), and
                               Lagasse, LLC (now known as Essendant Co.)

DEFENDANTS' MOTION TO STAY ACTION