C. Darryl Cordero, Bar No. 126689
cdc@paynefears.com
Eric M. Kennedy, Bar No. 228393
emk@paynefears.com
PAYNE & FEARS LLP
801 S. Figueroa Street, Suite 1150
Los Angeles, California 90017
Telephone: (213) 439-9911
Facsimile: (213) 439-9922

Scott Z. Zimmermann, Bar No. 78694
szimm@zkcf.com
601 S. Figueroa Street, Suite 2610
Los Angeles, California 90017
Telephone: (213) 452-6509
Facsimile: (213) 622-2171

Attorneys for Plaintiffs Craftwood II, Inc.,
dba Bay Hardware, and Craftwood
Lumber Company, and for all others
similarly situated

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| Craftwood II, Inc., *et al*., <br><br> Plaintiffs, <br><br> v. <br><br> United Stationers Inc., *et al.*, <br><br> Defendants. | Case No. 8:15-cv-00704- JLS-(DFMx) <br><br> **Plaintiffs' Amended Memorandum of Points and Authorities in Opposition to Defendants' Motion for Stay** <br><br> Hon. Josephine L. Staton <br><br> Date:  Sept. 11, 2015 <br> Time:  2:30 P.M. <br> Crtrm.: 10A |

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

# Table of Contents

**Page**

Introduction ................................................................................................................1

Essendant's Illegal Junk Fax Operation ......................................................................3

Essendant's Attempted Pick-off Moves ......................................................................5

Essendant's Motion to Stay .........................................................................................7

Argument .....................................................................................................................8

I.     Essendant Ignores the Strict Standards Governing Its Motion Under
       Controlling Ninth Circuit Precedents ................................................................8

II.    A Stay Would Seriously Interfere With the Orderly Course of Justice .............9

       A.     There Is No Justification to Await a Decision in *Campbell-Ewald*..........9

              1.     It is highly unlikely *Campbell-Ewald* will assist Essendant's
                     pick-off play .................................................................................9

              2.     Even if the Supreme Court adopts the mootness-by-
                     unaccepted-offer theory, this case would be unaffected...............11

       B.     There Is No Justification to Await a Decision in *Spokeo* ......................15

       C.     There Is No Justification to Await FCC Decision on Essendant's
              Retroactive Waiver Petition ..................................................................17

III.   A Stay Would Harm Plaintiffs, the Putative Class and the Public Interest ......21

IV.    Essendant Would Suffer No Hardship or Inequity in Being Required to
       Defend Its Junk Faxing........................................................................................23

V.     Essendant Cannot Make the "Strong Showing" Required to
       Justify an Indefinite Stay .................................................................................24

Conclusion ................................................................................................................25

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

**Table of Authorities**

**Page(s)**

**Cases**

*Alpern v. UtiliCorp United, Inc.*,
   84 F.3d 1525 (8th Cir. 1996) ...................................................................... 6

*Alvarado v. Bay Area Credit Serv., LLC*,
   No. 14-cv-02549, 2015 WL 224950 (N.D. Cal. Jan. 16, 2015) ........................ 24

*American Copper & Brass v. Lake City Indus. Prods., Inc.*,
   757 F.3d 540 (6th Cir. 2014) ...................................................................... 16

*Around the World Travel, Inc. v. Unique Vacations, Inc.*,
   No. 14-cv-12589, 2014 WL 6606953 (E.D. Mich. Nov. 19, 2014) ..................... 20

*Bates v. United Parcel Serv., Inc.*,
   511 F.3d 974 (9th Cir. 2007) (en banc) ......................................................... 16

*Beijing Tong Ren Tang (USA), Corp. v. TRT USA Corp.*,
   No. C-09-00882RMW, 2009 WL 5108578 (N.D. Cal. Dec. 18, 2009) ............... 23

*Campbell-Ewald Co. v. Gomez*,
   No. 14-857, 2015 WL 241891 (U.S. Jan. 16, 2015) ................................... 1, 9

*Carroll v. United Compucred Collections, Inc.*,
   399 F.3d 620 (6th Cir. 2005) ......................................................................... 6

*Central Valley Chrysler-Jeep v Witherspoon*,
   No. CV F 04-6663, 2006 WL 2473663 (E.D. Cal. Aug. 25, 2006) ............... 22, 23

*Chafin v. Chafin*,
   133 S. Ct. 1017 (2013) ................................................................................. 9

*Chapman v. First Index, Inc.*,
   No. 14-2773, 2015 WL 4652878 (7th Cir. Aug. 6, 2015) ......................... 6, 10, 11

*CMAX, Inc. v. Hall*,
   300 F.2d 265 (9th Cir. 1962) ........................................................................ 8

*Daisy, Inc. v. Pollo Operations, Inc.*,
   No. 14-CV-564-FTM-38CM, 2015 WL 1418607 (M.D. Fla. Mar. 27,
   2015) ..................................................................................................... 13

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

*Dependable Highway Express, Inc. v. Navigators Ins. Co.*,
  498 F.3d 1059 (9th Cir. 2007) ............................................................... 24

*Deposit Guar. Nat'l Bank v. Roper*,
  445 U.S. 326 (1980) ............................................................................... 14

*Diaz v. First Am. Home Buyers Prot. Corp.*,
  732 F.3d 948 (9th Cir. 2013) ................................................................... 5

*Dister v. Apple-Bay E., Inc.*,
  No. C 07-01377SBA, 2007 WL 4045429 (N.D. Cal. Nov. 15, 2007) .................. 23

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ................................................................... 17

*Erienet, Inc. v. Velocity Net, Inc.*,
  156 F.3d 513 (3d Cir. 1998) ..................................................................... 4

*Fauley v. Heska Corp.*,
  No. 15 C 2171, 2015 WL 4079189 (N.D. Ill. July 6, 2015) ...................... 19, 20

*First Am. Fin. Corp. v. Edwards*,
  131 S. Ct. 3022 (June 20, 2011) .............................................................. 15

*Genesis Healthcare Corp. v. Symczyk*,
  133 S. Ct. 1533 (2013) ........................................................................... 10

*Gomez v. Campbell-Ewald Co.*,
  768 F.3d 871 (9th Cir. 2014) ................................................................... 5

*Gomez v. Campbell-Ewald Co.*,
  805 F. Supp. 2d 923 (C.D. Cal. 2011), *aff'd*, 768 F.3d 871 (9th Cir.
  2014), *cert. granted*, 135 S. Ct. 2311 (2015) ...................... 1, 5, 6, 7, 9, 11, 12, 24

*Greig v. U.S. Airways Inc.*,
  28 F. Supp. 3d 973 (D. Ariz. 2014) ......................................................... 13

*Hooks v. Landmark Indus., Inc.*,
  No. 14-20496, 2015 WL 4760253 (5th Cir. Aug. 12, 2015) ...................... 6, 10

*Hrivnak v. NCO Portfolio Mgmt., Inc.*,
  719 F.3d 564 (6th Cir. 2013) ................................................................... 12

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

*Imagenetix, Inc. v. GNC Parent, LLC*,
   No. 12-CV-0089-H (RBB), 2012 WL 2923314 (S.D. Cal. July 18,
   2012) ................................................................................................. 23

*Imhoff Invest., L.L.C. v. Alfoccino, Inc.*,
   792 F.3d 627 (6th Cir. 2015) ........................................................... 16

*Ira Holtzman, C.P.A., & Assocs., Ltd. v. Turza*,
   728 F.3d 682 (7th Cir. 2013) ........................................................... 16

*Jamison v. First Credit Servs., Inc.*,
   290 F.R.D. 92 (N.D. Ill. 2013) ........................................................ 24

*Jay Clogg Realty Group, Inc. v. Burger King Corp.*,
   298 F.R.D. 304 (D. Md. 2014) ......................................................... 22

*Kaufman v. ACS Sys., Inc.*,
   110 Cal. App. 4th 886 (2003) .......................................................... 22

*Knapp-Ellis v. Stellar Recovery, Inc.*,
   No. 2:13-cv-01967, 2014 WL 5023632 (W.D. Wash. Oct. 8, 2014) .............. 20, 24

*Knox v. Service Employees*,
   132 S. Ct. 2277 (2012) ................................................................. 9, 10

*Landis v. North Am. Co.*,
   299 U.S. 248 (1936) .............................................................. 8, 23, 24

*Leyva v. Certified Grocers*,
   593 F.2d 857 (9th Cir. 1979) ...................................................... 8, 24

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005) ..................................................... 8, 23

*Lucero v. Bureau of Collection Recovery, Inc.*,
   639 F.3d 1239 (10th Cir. 2011) ......................................................... 6

*Melendres v. Maricopa County*,
   No. 07-CV-02513, 2009 WL 2515618 (D. Ariz. Aug. 13, 2009) ......................... 21

*Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*,
   781 F.3d 1245 (11th Cir. 2015) ........................................................ 16

*Payne v. Progressive Fin. Servs., Inc.*,
   748 F.3d 605 (5th Cir. 2014) ........................................................... 11

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

*Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*,
   No. 12-22330, 2014 WL 7366255 (S.D. Fla. Dec. 24, 2014) ........................19, 20

*Physicians Healthsource, Inc. v. Masimo*,
   No. 8:14-cv-00001-JVS-AN (C.D. Cal. May 22, 2014) ........................................21

*Physicians Healthsource, Inc. v. Stryker Sales Corp.*,
   65 F. Supp. 3d 482 (W.D. Mich. 2014) ................................................................19

*Pitts v. Terrible Herbst, Inc.*,
   653 F.3d 1081 (9th Cir. 2011) ...........................................................................5, 6

*Siding and Insulation Co. v. Beachwood Hair Clinic, Inc.*,
   No. 11-cv-01074, 2011 WL 4005396 (N.D. Ohio Sept. 8, 2011).........................22

*Simon v. Healthways, Inc.*,
   No. CV 14-08022 BRO, 2015 WL 1568230 (C.D. Cal. April 7, 2015)
   (O'Connell, J.) .................................................................................................20, 21

*Smith v. Greystone Alliance, LLC*,
   772 F.3d 448 (7th Cir. 2014) ...............................................................12, 13, 15

*Speer v. Whole Food Mkt. Grp., Inc.*,
   No. 8:14-CV-3035-T-26TBM, 2015 WL 2061665 (M.D. Fla. Apr.
   29, 2015) ..............................................................................................................17

*Spokeo, Inc. v. Robins*,
   No. 13-1339, 2015 WL 4148655.........................................1, 2, 7, 9, 15, 16, 17, 24

*Stein v. Buccaneers Ltd. P'ship*,
   772 F.3d 698 (11th Cir. 2014) ...........................................................................6, 11

*True Health Chiropractic Inc. v. McKesson Corp.*,
   No. 13-CV-02219, 2014 WL 6707594 (N.D. Cal. Nov. 30, 2014)........................20

*Vandervort v. Balboa Cap. Corp.*,
   287 F.R.D. 554 (C.D. Cal. 2012) ..........................................................................4

*Warren v. Sessions & Rogers, P.A.*,
   676 F.3d 365 (4th Cir. 2012) ................................................................................5

*Weiss v. Regal Collections*,
   385 F.3d 337 (3d Cir. 2004) ..................................................................................6

*Yearsley v. W.A. Ross Constr. Co.*,
   309 U.S. 18 (1940).................................................................................9

*Yong v. I.N.S.*,
   208 F.3d 1116 (9th Cir. 2000) .........................................................22

*Zillow, Inc. v. Trulia, Inc.*,
   No. C12-1549JLR, 2013 WL 594300 (W.D. Wash. Feb. 15, 2013)..................8, 23

**Statutes**

Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ..........................*passim*

Fair Credit Reporting Act, 15 U.S.C. § 1681 ...................................2, 15, 16

**Other Authorities**

47 C.F.R. § 64.1200(a)(4)(iii)-(vii) ..........................................................4

FED. R. CIV. P. 1 ...............................................................................25

Fed. R. Civ. P. 23(c)(1)(A) ...................................................................22

Fed. R. Civ. P. 68(b) ...........................................................................6

Federal Communications Commission, Report and Order and Third
   Order on Reconsideration, 21 FCC Rcd. 3787 ¶ 26 (2006) .....................4

Local Rule 7-3............................................................6, 12, 14, 22

Local Rule 7-6..........................................................................23

*Petitions for Declaratory Ruling, Waiver, and/or Rulemaking Regarding
   the Commission's Opt-Out Requirement for Faxes Sent with the
   Recipient's Prior Express Permission*, CG Docket Nos. 02-278, 05-
   338, Order, FCC 14-164 (rel. Oct. 30, 2014) ("Opt-Out Order")
   .......................................................................7, 17, 18, 21, 25

*Rules & Regulations Implementing the Telephone Consumer Protection
   Act of 1991* ......................................................................7

PAYNE & FEARS LLP

ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Introduction

Plaintiffs recently commenced this action for mass fax-blasting by Defendants Essendant, Inc., *et al.*, in violation of the Telephone Consumer Protection Act of 1991.[1]  During a two-month period alone, Essendant blasted at least 14 illegal junk fax ads to Plaintiffs.  Plaintiffs promptly sued seeking damages and injunctive relief not only for themselves, but for all recipients of Essendant's illegal junk faxes.

Essendant has done everything possible to try to avoid defending its conduct on its merits.  First, Essendant petitioned the FCC to retroactively "waive" the company's violations of a regulation requiring opt-out disclosures on solicited faxes.  Then the company made two attempts to "pick-off" Plaintiffs through Rule 68 offers.  Now Essendant asks the Court to enter an open-ended, assuredly lengthy stay of the entire case.  The company wants to bring the case to a complete standstill until the Supreme Court decides two cases next term (*Campbell-Ewald v. Gomez* and *Spokeo, Inc. v. Robins*), ***and*** the FCC decides Essendant's petition for a retroactive waiver.  The Court should reject Essendant's attempt to stymie this litigation:

• Staying an action to await developments in another proceeding is an extraordinary event.  This case does not begin to qualify.  The first factor—promotion of the orderly course of justice—would be severely compromised because the chances the Supreme Court will adopt the mootness-by-unaccepted-offer theory in *Campbell-Ewald* are remote, at best.  And even in the highly unlikely event the Court embraced the theory, it would not affect this Court's jurisdiction one *iota* because neither of Essendant's pick-off moves came close to offering the complete relief sought by Plaintiffs.

• There is also no reason to await a decision from the Supreme Court in *Spokeo.  Spokeo* concerns a false consumer credit report in alleged violation of the

---

[1] Since this action was filed Defendants have gone through name changes and/or corporate reorganizations.  Because they remain members of the same corporate family, for ease of reference they will be referred to as "Essendant."

Fair Credit Reporting Act, for which the plaintiff apparently suffered no injury. Indeed, the two pieces of information in plaintiff's credit report were more laudatory than plaintiff's actual experience.  It is sheer speculation whether the Court will reach the "bare violation" issue under the facts of the case.  Moreover, *Spokeo* does not involve illegal junk faxes, which courts have uniformly held cause intrinsic injury and damage to its recipients by their very transmission.

• There is even less basis to hold up this case until the FCC eventually decides Essendant's waiver petition.  The FCC, which is notoriously lethargic, would at most "waive" Essendant's violation of a regulation requiring opt-out disclosures on *solicited* faxes, *i.e.,* faxes sent with prior express permission (PEP). Essendant has been sued for, among other things, sending unsolicited faxes.  Even a decision favorable to Essendant would require the company to come forth with proof that it received PEP from recipients and not change the scope of discovery.  More immediately, Essendant failed to submit any evidence of PEP with its motion and courts have uniformly denied motions to stay to such defendants.  And even if Essendant received a waiver, it would only add the common issue whether the FCC has constitutional and statutory authority to bestow immunity on a party in an Article III court.

• A stay would harm the legitimate interests of Plaintiffs, the putative class and the public in prompt resolution.  It would delay adjudication of Essendant's junk faxes and relief to Plaintiffs and a putative class.  It would undermine one of TCPA's core objectives—to deter public harm caused by illegal junk faxing.   It would also create a risk of loss of ESI and other evidence in the process.

• Where, as here, there is even a fair possibility of harm to another, the party seeking a stay "must make out a clear case of hardship or inequity."  Essendant falls well short of this standard.  The company asserts only that defending its junk fax programs will consume resources.  But it is well established that the "burden" of defending a lawsuit cannot justify a stay.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

PAYNE & FEARS LLP

ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

**Essendant's Illegal Junk Fax Operation**

The complaint avers that Essendant planned and implemented a mass junk fax advertising program in direct violation of the TCPA. (Dkt. No. 1, ¶¶ 3, 30, 31.) Essendant is a national wholesale distributor and seller of office products, janitorial and break room supplies, and industrial supplies. (*Id*. ¶ 14.) Over the past four years Essendant sent junk faxes advertising its products and services, including its website, to potential customers throughout the United States. (*Id*. ¶¶ 30, 31; *see also id*. Exs. 1-13.) Essendant sent the faxes without obtaining prior express invitation or permission (PEP) from recipients, in direct violation of 47 U.S.C. § 227(b)(1). (*Id*. ¶ 30.) Essendant independently violated the law by sending faxes that failed to contain required opt-out disclosures to recipients of their right to stop future junk faxes, and how to exercise that right. (*Id*. ¶ 31.)

Plaintiffs were among Essendant's junk fax victims. Plaintiff Craftwood II operates "Bay Hardware," a small family-owned retail business on Main Street in downtown Seal Beach. (Diana Brunjes Decl. ¶ 3.) Within a two-month period alone, Essendant blasted at least ten junk faxes to Bay. (*Id*. ¶ 6.)[2] Plaintiff Craftwood Lumber Company, also owned by the Brunjes family, is a full-service hardware and lumber store in Highland Park, Illinois. (David Brunjes Decl. ¶ 1.) Craftwood received *at least* three Essendant junk faxes during a two-month stretch (*id*. ¶ 7), and Essendant has since admitted sending a fourth. (Dkt. No. 31, ¶ 5.) Plaintiffs did not give permission to Essendant to send junk faxes. (Diana Brunjes Decl. ¶ 6; David Brunjes Decl. ¶ 7.) And all Essendant faxes failed to include mandatory opt-out disclosures of recipients' right to stop future junk faxes. (Dkt. No. 1, ¶ 31.)[3]

---

[2] Essendant misrepresents the complaint's averments by asserting that Bay "claims that it was sent ten (10) alleged fax advertisements." (Dkt. No. 28 at 18.) To the contrary, the complaint avers that Bay was sent numerous Essendant junk faxes, including but not limited to the *ten exemplars* attached to the complaint. (*See* Dkt. No. 1, ¶ 3.)

[3] These faxes contained the statement: "If you have received this fax in error, please accept our apologies and call toll free 877.385.4440 to be removed from our
(footnote continued)

PAYNE & FEARS LLP

ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

1    The Brunjes are well-educated, experienced business people.  (Diana Brunjes

2  Decl. ¶ 2; David Brunjes Decl. ¶¶ 1-4.)  They seek to stanch the tide of junk faxes,

3  which they strongly believe hurts businesses and consumers alike.  Between them

4  they filed over *350* complaints to the FCC about junk faxes, without the agency

5  taking any action.  (Diana Brunjes Decl. ¶ 8; David Brunjes Decl. ¶ 9.)  Frustrated

6  with FCC ineffectiveness, they turned to class actions as a method to fight junk faxes.

7  FCC inaction and limited resources to combat junk faxes are why courts acknowledge

8  that the class action remedy gives the TCPA its "teeth."  *Erienet, Inc. v. Velocity Net,*

9  *Inc.*, 156 F.3d 513, 515 (3d Cir. 1998).  Plaintiffs have fulfilled their roles as class

10  representatives in securing substantial compensation for classes of junk fax

11  recipients.  (*Id.*)

12    Here, Plaintiffs seek damages, injunctive, and class-related relief.  They seek

13  statutory damages in the amount of $500 for each Essendant violation of the Act and

14  FCC regulations, and trebling of those damages, "in an amount not less than $5

15  million."  (Dkt. No. 1, p. 17.)  They seek to enjoin Essendant from ever again sending

16  anyone any junk faxes, as well as four additional items of injunctive relief: to require

17  Essendant to deliver records of their junk faxing; to conduct TCPA educational,

18  training and monitoring programs; to give written warnings about complying with the

19  Act to recipients of its faxes; and to post such warnings on its website.  (*Id.* ¶ 33, p.

20

---

21  list."  (*See* Dkt. No. 1, Exs. 1-13.)  This statement does not come close to complying
22  with the law, which requires at least six different disclosures.  *See* 47 U.S.C.A. §
       227(b)(1)(C)(iii), (b)(2)(D), (b)(2)(E), (d)(2) (West 2015); 47 C.F.R. §
23  64.1200(a)(4)(iii)-(vii)); Federal Communications Commission, Report and Order
       and Third Order on Reconsideration, 21 FCC Rcd. 3787 ¶ 26 (2006). Recognizing its
24  violation, Essendant asserts that "Plaintiffs do not allege that they were confused by
       this notice, or that they contacted Essendant and continued to receive unwanted
25  faxes."  (Dkt. No. 28 at 10.)  This is an attempted misdirection by Essendant's
       seasoned TCPA lawyers.  A recipient's "confusion" or continued receipt of junk
26  faxes is irrelevant to an advertiser's liability for failure to comply with the law.  It is
       sufficient that the junk fax fails to contain the mandatory disclosures. *See id.*; *see*
27  *also Vandervort v. Balboa Cap. Corp.*, 287 F.R.D. 554, 561 (C.D. Cal. 2012) (Staton,
       J.).
28

18.)  Plaintiffs also seek prejudgment interest.  (*Id.* p. 18.)

The class-related relief includes (1) certifying a class of all subscribers of telephone numbers to whom Essendant sent junk faxes; (2) appointing Plaintiffs as class representatives and awarding them incentive awards for their work; and (3) ordering that Plaintiffs' litigation costs fees be spread among members of the class "in relation to the benefits received by the Plaintiff Class."  (*Id.*, pp. 17-18.)

### Essendant's Attempted Pick-off Moves

Soon after service of the complaint, Essendant's lawyers sent, on May 21, an "Offer of Judgment" to Plaintiffs' attorneys.  (*See* Dkt. No. 29-1.)  Essendant offered to have judgment entered against it in favor of Bay in the amount of $16,500, and in favor of Craftwood in the amount of $5,500.  (*Id.*)  Essendant also offered entry of "an injunction prohibiting Essendant from transmitting facsimile advertisements to either of the Plaintiffs."  (*Id.*)  Essendant did not, however, offer entry of the injunction actually sought in the complaint, nor did it agree to pay prejudgment interest.  (*Id.*)

The purported Rule 68 offer is a standard ploy by class action defendants to attempt to avoid full legal accountability for their conduct.  In what Judge Gee aptly described as a "facile procedural 'gotcha,'" *Gomez v. Campbell-Ewald Co.*, 805 F. Supp. 2d 923, 930 (C.D. Cal. 2011), *aff'd*, 768 F.3d 871 (9th Cir. 2014), *cert. granted*, 135 S. Ct. 2311 (2015), the defendant purports to offer "full relief" to the individual named plaintiff.  After the offer is inevitably not accepted, the defendant then moves to dismiss the case on grounds that it has become "moot" and lacks Article III jurisdiction.  The Ninth Circuit has repeatedly rejected the mootness-by-unaccepted-offer trick.  *See, e.g., Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 874-75 (9th Cir. 2014); *Diaz v. First Am. Home Buyers Prot. Corp.*, 732 F.3d 948, 950 (9th Cir. 2013); *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1089-91 (9th Cir. 2011).  Other circuits, however, have theorized that an unaccepted offer somehow "moots" the case and deprives the court of jurisdiction.  *See Warren v. Sessions & Rogers,*

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

*P.A.*, 676 F.3d 365, 371 (4th Cir. 2012).[4]

Plaintiffs did not accept Essendant's purported Rule 68 offer and, by operation of the rule, the offer was "withdrawn." *See* Fed. R. Civ. P. 68(b). The same day the Rule 68 offer was sent, Plaintiffs filed a protective class certification motion already in the works. (*See* Dkt. Nos. 12, 13.) Plaintiffs did so out of abundance of caution because a few days earlier the Supreme Court had granted certiorari in *Campbell-Ewald*. Even in circuits that permit the pick-off tactic, the plaintiff and class are protected against the ploy by moving for class certification. *See Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620, 625 (6th Cir. 2005).[5]

A few weeks after its Rule 68 offer, Essendant revealed that it would move to stay this litigation until the Supreme Court decides *Campbell-Ewald* and *Spokeo* and the FCC rules on its recent waiver petition. In the ensuing Local Rule 7-3 meetings, Plaintiffs' attorney told Essendant's lawyers that their pick-off tactic was ineffectual under well-established Ninth Circuit precedents and did not, in any case, offer Plaintiffs complete relief. (Cordero Decl. ¶ 3.)

A few days after the second Local Rule 7-3 meeting, Essendant attempted to plug the holes in its incomplete offer by sending yet another purported Rule 68 offer on July 10. (*See* Dkt. No. 29-2.) This offer also failed to provide Plaintiffs complete relief; it was not accepted and, by operation of the rule, the offer was withdrawn.

---

[4] Until recently the Fifth and Seventh Circuits were firmly in this camp. Earlier this month, however, both courts overruled their prior precedents and held that a class defendant cannot strip a court of jurisdiction by making a full-relief offer to the putative class representative. *See Hooks v. Landmark Indus., Inc.*, No. 14-20496, 2015 WL 4760253, at *3 (5th Cir. Aug. 12, 2015); *Chapman v. First Index, Inc.*, No. 14-2773, 2015 WL 4652878, at *3 (7th Cir. Aug. 6, 2015). This issue is discussed in more depth at pages 10-11, *infra*.

[5] The Third, Ninth, Tenth, and Eleventh Circuits hold that even if a defendant's offer "moots" an individual plaintiff's claims, the class claims are not moot so long as the plaintiff diligently pursues certification. *Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698, 702-07 (11th Cir. 2014); *Pitts*, 653 F.3d at 1091-92; *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1250 (10th Cir. 2011); *Weiss v. Regal Collections*, 385 F.3d 337, 346-48 (3d Cir. 2004). The Eighth Circuit prohibits offers of judgment until "class certification has been properly denied" on the merits. *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1539 (8th Cir. 1996).

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

**Essandant's Motion to Stay**

Essandant seeks to stay the litigation indefinitely until the *last* of three events occur: (1) the Supreme Court issues its decision in *Campbell-Ewald*; (2) the Supreme Court decides *Spokeo*; *and* (3) the FCC rules on its recently-filed petition for a retroactive "waiver." (Dkt. No. 28 at 2.) Essandant asserts that decisions in *Campbell-Ewald* and *Spokeo* "will directly impact this case and this Court's subject matter jurisdiction." (*Id.* at 11.) A stay, Essandant insists, "would prevent this Court and the parties from expending substantial time and resources litigation this action despite a potential lack of jurisdiction, and would cause no prejudice to Plaintiffs..." (*Id.*)

The third head of the Hydra concerns Essandant's petition for retroactive waiver, filed in response to an FCC order on October 30, 2014.[6] In its order, the FCC reaffirmed its regulation requiring opt-out notice disclosures on solicited faxes, but granted retroactive waivers of the regulation to petitioners covered by the order. The FCC announced it would permit other advertisers to file similar petitions within the next six months, or on or before April 30, 2015. Opt-Out Order ¶ 27.

Essendant did not originally seek a waiver with the FCC, nor did it file a petition by the April 30 deadline. (Essendant filed on May 18; Dkt. No. 32-2.) Essandant baldly asserts that if the FCC grants its petition, "any plaintiff or putative class member who consented to receive the faxes at issue would have no TCPA claim against any of [sic] Defendants." (Dkt. No. 28 at 3.)

---

[6] *See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005; Application for Review filed by Anda, Inc.; Petitions for Declaratory Ruling, Waiver, and/or Rulemaking Regarding the Commission's Opt-Out Requirement for Faxes Sent with the Recipient's Prior Express Permission*, CG Docket Nos. 02-278, 05-338, Order, FCC 14-164 (rel. Oct. 30, 2014) ("Opt-Out Order").

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

**Argument**

## I.    Essendant Ignores the Strict Standards Governing Its Motion Under Controlling Ninth Circuit Precedents

Essendant's request for stay fails well-established standards for granting a so-called *Landis* stay.   *See Landis v. North Am. Co.*, 299 U.S. 248 (1936).  In fact, literally none of these factors support a stay here.  The burden of a party seeking to stay proceedings pending developments in another lawsuit is deliberately high.  "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255; *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109-10 (9th Cir. 2005).  In deciding whether to stay, courts must weigh "the competing interests which will be affected by the granting or refusal to grant a stay..." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  Among these are (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.*; *see also Lockyer*, 398 F.3d at 1110.

But this is only the beginning of the analysis.  "A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva v. Certified Grocers*, 593 F.2d 857, 864 (9th Cir. 1979).  And "a heightened burden applies if there is even a 'fair possibility' that the stay will work damage to another party." *Zillow, Inc. v. Trulia, Inc.*, No. C12-1549JLR, 2013 WL 594300, at *3 (W.D. Wash. Feb. 15, 2013).   In this circumstance, the stay proponent "must make out a clear case of hardship or inequity." *Lockyer*, 398 F.3d at 1109-10, 1111.

**II.    A Stay Would Seriously Interfere With the Orderly Course of Justice**

The core premise underlying Essendant's stay attempt is that some combination of Supreme Court decisions in *Campbell-Ewald* and *Spokeo* and FCC ruling could materially affect the outcome of this litigation.  But neither *Campbell-Ewald* nor *Spokeo* will have any impact on this case.  And even if the FCC grants Essendant's petition, the practical effect on this case would be nil.

**A.    There Is No Justification to Await a Decision in *Campbell-Ewald***

**1.    It is highly unlikely *Campbell-Ewald* will assist Essendant's pick-off play**

The Supreme Court granted certiorari in *Campbell-Ewald* to decide three questions, only two of which involve the potential mooting effect of a Rule 68 offer.  The third question was: "Whether the doctrine of derivative sovereign immunity recognized in *Yearsley v. W.A. Ross Constr. Co.,* 309 U.S. 18 (1940), for government contractors is restricted to claims arising out of property damage caused by public works projects."  *Campbell-Ewald Co. v. Gomez,* No. 14-857, 2015 WL 241891, at *i (U.S. Jan. 16, 2015).  The Supreme Court could easily avoid the pick-off questions and hold the government contractor in that case—who sent text messages on behalf of the U.S. Navy—is protected by derivative sovereign immunity.

Even if the Court actually reaches the pick off issue, for *Campbell-Ewald* to aid Essendant, the Court would have to overrule a long line of firmly-established "mootness" precedents.  As the Court recently explained, "Article III of the Constitution restricts the power of federal courts to 'Cases' and 'Controversies...'" *Chafin v. Chafin*, 133 S. Ct. 1017, 1019 (2013) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990)).  "[A] suit becomes moot 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'"  *Id*. (quoting *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013)).  But a case "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party."  *Knox v. Service Employees*, 132 S. Ct. 2277,

2287 (2012).  "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."  132 S. Ct. at 2287.

Two years ago the Supreme Court granted certiorari in *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1533 (2013), to resolve a circuit split whether an unaccepted Rule 68 offer moots a case.  But it ultimately avoided the issue because the Court "assumed, *without deciding*, that petitioner's Rule 68 offer mooted respondent's individual claim."  *Id*. at 1529 (emphasis supplied).  The Court then issued a narrow holding that when a FLSA plaintiff's individual claim becomes moot, the entire FLSA collective action is also moot.  *Id.*  In a dissent authored by Justice Kagan, however, four justices declined to assume the mootness of the individual claim and concluded that an offer of judgment, no matter how good, does not moot a plaintiff's claim.  *See id*. at 1533 (Kagan, J., dissenting).  Justice Kagan pointed out that "an unaccepted settlement offer—like any unaccepted contract offer—is a legal nullity, with no operative effect."  *Id.*  Justice Kagan also pointed out that "[n]othing in Rule 68 alters this basic principle; to the contrary, that rule specifies that '[a]n unaccepted offer is considered withdrawn.'"  *Id.* at 1534.

Since *Genesis* the federal appeals courts have uniformly held that an unaccepted Rule 68 offer does not "moot" a named class plaintiff's claims.  Only two weeks ago the Fifth Circuit squarely held that "[t]he court is not deprived of the ability to enter relief—and thus the claim is not mooted—when a named plaintiff in a putative class action rejects a settlement offer from the defendant."  *Hooks v. Landmark Indus., Inc*., 2015 WL 4760253, at \*3 (citing *Knox*, 132 S. Ct. at 2287; *Genesis*, 133 S. Ct. at 1534 (Kagan, J., dissenting); *Diaz*, 732 F.3d at 954-55).

Earlier this month the Seventh Circuit, which had been firmly in the mootness-by-unaccepted-offer camp, overruled its prior precedents and held that a defendant's offer of full compensation does *not* moot the litigation or otherwise end the Article III case or controversy.  *Chapman v. First Index, Inc*., No. 14-2773, 2015 WL 4652878, at \*3 (7th Cir. Aug. 6, 2015).  And last December the Eleventh Circuit emphatically

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

-10-

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

1  held that a plaintiff seeking relief for illegal junk faxes could reject a Rule 68 offer
2  without mooting the case: "Giving controlling effect to an unaccepted Rule 68
3  offer—dismissing a case based on an unaccepted offer as was done here—is flatly
4  inconsistent with the rule." *Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698, 702 (11th
5  Cir. 2014).

6  Neither the Fifth nor Seventh Circuits believed they should await a decision in
7  *Campbell-Ewald.* To the contrary, the Seventh Circuit recognized "[t]he issue is
8  before the Supreme Court in *Gomez*," but opined "we think it best to clean up the law
9  of this circuit promptly, rather than require [the plaintiff] and others in his position to
10 wait another year for the Supreme Court's decision." *Chapman*, 2015 WL 4652878,
11 at *3. There is no reason this Court should respond any differently.

12 Further, in order for the outcome of *Campbell-Ewald* to make a difference
13 here, the Supreme Court would have to overrule seven circuit courts and create some
14 new standard under which a defendant may pick off a putative class representative at
15 any time without the plaintiff or the district court being able to do anything about it,
16 and essentially nullify the class-action device for mass consumer injuries. Even
17 Essendant does not argue the Supreme Court is likely to do so, or even whether any
18 party to the appeal is arguing for such a standard (as opposed to arguing for one
19 circuit court's approach over another). There is no cause for a stay.

20 **2. Even if the Supreme Court adopts the mootness-by-**
21 **unaccepted-offer theory, this case would be unaffected**

22 Even in the highly remote event that the Supreme Court embraces the broadest
23 possible mootness-by-unaccepted-offer theory, this Court's jurisdiction would remain
24 firmly intact. Without exception, even circuits that formerly permitted the ruse
25 required the defendant to offer *complete* relief, as measured by the plaintiff's demand.
26 "An incomplete offer of judgment—that is, one that does not offer to meet the
27 plaintiff's full demand for relief—does not render the plaintiff's claims moot."
28 *Payne v. Progressive Fin. Servs., Inc.*, 748 F.3d 605, 607 (5th Cir. 2014); *see also*

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

*Hrivnak v. NCO Portfolio Mgmt., Inc*., 719 F.3d 564, 567 (6th Cir. 2013).  Complete relief means exactly that—*everything* requested in the complaint: "A defendant cannot have the suit dismissed by making an offer limited to what it concedes the plaintiff is entitled to receive, even if the defendant happens to be right about its view of the plaintiff's entitlement, because deciding that entitlement resolves the merits." *Smith v. Greystone Alliance, LLC*, 772 F.3d 448, 450 (7th Cir. 2014).

Because neither Essendant's first May 21 offer nor the company's July 10 mulligan offered Plaintiffs complete relief, the Court would retain jurisdiction in all events.  Indeed, whether an offer provides full relief is *not* at issue in *Campbell-Ewald*.  The district court found that the "[t]he parties do not dispute that Defendant's Rule 68 Offer would have fully satisfied the individual claims asserted, or that could have been asserted, by Plaintiff in this action."  805 F. Supp. 2d at 927.[7]

• **The May 21 offer.**  The numerous ways in which Essendant's May 21 offer fell short of offering complete relief were exposed in the Local Rule 7-3 meeting.  First, Essendant did not offer the injunction sought by the complaint: prohibiting "Defendants *and their employees, agents, representatives, contractors, affiliates and all persons and entities acting in concert with them*, from committing further violations of the Act and FCC regulations [including]...sending to *any person or entity* any further unsolicited fax advertisements and fax advertisements that do not comply with the Opt-Out Notice Requirements."  (Dkt. No. 1, ¶ 33 (emphasis supplied).)  Yet Essendant offered only an injunction "prohibiting *Defendants* from transmitting facsimile advertisements," excluding its employees, contractors and other agents, and limiting the scope to faxes "to either of the *Plaintiffs*."  (Dkt. No.

---

[7] This fact distinguishes *all* cases cited by Essendant in which stays have been granted in light of *Campbell-Ewald*.  (*See* Dkt. No. 28, pp. 17-18.)  In every case there was either an acknowledged complete offer, or the plaintiff did not argue that the offer was incomplete.  (*See* Dkt. No. 33, Exs. 1, 9, 10, 12, 14, 15, 16, 20 and 21; Dkt. No. 36, Exs. 3, 5, 6, 8, and 11.)  Further, in *Mey* and *In re Monitornics* the parties stipulated to stays and in *Klein* the plaintiff did not oppose a stay.

29-1 at 4 (emphasis supplied).)  Essendant also failed to offer the other four items of injunctive relief sought in the complaint, requiring Essendant to (1) deliver all records of facsimile advertisements; (2) conduct TCPA educational, training and monitoring programs; (3) provide written notice to all junk fax recipients; and (4) provide warnings on its website.  (Dkt. No. 1, ¶ 33.)[8]

Second, Essendant did not offer all damages sought in the prayer.  Plaintiffs sought damages of $500 for *each* violation of the statute and FCC regulations committed by Essendant, plus trebling of this amount for Essendant's willful violations.  (*See* Dkt. No. 1, p. 17.)  The complaint avers that Essendant "sent a torrent of junk faxes to Plaintiffs, *including, but not limited to*," the 13 exemplars attached as exhibits.  (*Id*. ¶ 3 (emphasis supplied).)[9]  Essendant asserts that it has "reviewed fax records and confirmed that a total of fourteen facsimiles, at the most, have been sent to Plaintiffs since May 1, 2011."  (Dkt. No. 28 at 12.)[10]  But Essendant cannot unilaterally adjudicate how many violations it committed, then make "an offer limited to what it concedes the plaintiff[s] [are] entitled to receive."  *Smith*, 772 F.3d at 450.  The number of faxes sent to Plaintiffs needs to be investigated through discovery.  *See Daisy, Inc. v. Pollo Operations, Inc.*, No. 14-CV-564-FTM-38CM,

_____

[8]  Essendant anticipates the problem but insists that the additional relief was "permissibly left out of the May 20 [sic] Offer because they do not provide the named Plaintiffs, who already have knowledge of the purported violations, with any additional relief."  (Dkt. No. 28 at 19 n.5.)  This assertion is meritless.  The "relief" demanded by Plaintiffs is determined by the complaint, not the defendant's unilateral determination whether the plaintiff would find it worthwhile.  *Smith*, 772 F.3d at 450.

[9]  Essendant repeatedly mischaracterizes Plaintiffs' claims as limited to 13 faxes.  (*E.g.*, Dkt. No. 28 at 10.)  *See* n.2, *supra*.

[10]  The only "proof" offered by Essendant is hearsay testimony by Kaitlin Corcoran, a marketing employee.  (*See* Dkt. No. 31.)  Ms. Corcoran testified that she reviewed unidentified "records relating to the transmission of facsimiles" and concluded that only one additional fax was sent to Plaintiffs in addition to the 13 examples attached to the complaint.  (*Id*. ¶ 5.)  This is inadmissible hearsay based on unauthenticated documents (*see* Dkt. No. 35); indeed, Essendant has not even produced the documents on which the testimony is based.  *See Greig v. U.S. Airways Inc.*, 28 F. Supp. 3d 973, 976 (D. Ariz. 2014) (declaration testimony regarding unauthenticated business records is inadmissible).

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

1  2015 WL 1418607, at *3 (M.D. Fla. Mar. 27, 2015) (complaint alleged multiple junk

2  faxes; "[w]ithout discovery into how many" faxes were sent, the court could not

3  determine whether the offer provided "full and complete relief").

4         Third, Essendant did not offer full relief even for the four faxes it admittedly

5  sent to Craftwood Lumber Company. (Dkt. No. 28 at 12.)  Essendant's potential

6  liability for these faxes alone would be at least $6,000 (4 x $1,500), yet Essendant

7  offered only $5,500 to Craftwood.

8         Fourth, Essendant did not offer to pay prejudgment interest, even though that

9  relief was expressly sought in the complaint.  (*See* Dkt. No. 1, p. 18; Dkt. No. 28-1.)

10        Finally, the offer did not satisfy Plaintiffs' demand that their "costs of

11 litigation, including without limitation, costs of suit and attorneys' fees, be shared

12 among members of the Plaintiff Class in relation to the benefits received by the

13 Plaintiff Class" or request for incentive awards.  (Dkt. No. 1, pp. 17-18.)  It is well

14 established that a named plaintiff's "economic interest in class certification" is

15 sufficient to confer Article III standing.  *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S.

16 326, 333, 336 (1980).

17        •      **The July 10 offer.**  After two Local Rule 7-3 meetings highlighted the

18 many defects in its May 21 offer, Essendant attempted a new pick-off move on July

19 10.  But that offer also failed to offer anything close to complete relief.  First,

20 Essendant still failed to offer the injunctive relief sought by Plaintiffs.  Although now

21 Essendant included its employees, contractors and agents within the scope of the

22 injunction (Dkt. No. 29-2), the injunction was still limited to faxes to Plaintiffs and

23 continued to withhold the four additional injunctive commands sought in the

24 complaint.  (*Id*.)

25        Second, even the limited injunction offered by Essendant was illusory.

26 Plaintiffs seek an injunction prohibiting Essendant from sending unsolicited fax

27 advertisements, as exemplified by the 13 complaint exhibits.  But "Essendant

28 disputes that all 13 facsimiles identified in the Complaint are, in fact,

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

-14-

advertisements." (Dkt. No. 31, ¶ 4.)  By offering entry of "an injunction...prohibiting Defendants, [etc.]...from transmitting *facsimile advertisements* to either of the Plaintiffs" (Dkt. No. 29-2 (emphasis supplied)), Essendant was not unconditionally agreeing to be restrained from faxing documents of the type at issue in the complaint.

Third, although Essendant increased the overall monetary compensation to $25,000, but this amount is still "limited to what [Essendant] concedes the plaintiff is entitled to receive," *Smith*, 772 F.3d at 450, based on its unilateral determination of the number of violations.

### B.    There Is No Justification to Await a Decision in *Spokeo*

Essendant next asks the Court to stay this case pending the Supreme Court's disposition of *Spokeo*.  In that case, the Supreme Court granted certiorari to decide "Whether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a *bare violation* of a federal statute." *Spokeo, Inc. v. Robins,* No. 13-1339, 2015 WL 4148655, at *i (U.S. July 2, 2015) (emphasis supplied).  The case does not remotely involve illegal junk faxing, or even the TCPA; rather, the claim in that case is based on false consumer credit report in alleged violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, for which the plaintiff apparently suffered no injury.  Indeed, plaintiff's credit report contained two pieces of information more laudatory than plaintiff's actual experience.

There is even less justification to await the outcome of this case.  First, not only is it unclear *how* the Supreme Court would decide the "bare violation" issue under the facts of *Spokeo*, it is not even clear *whether* the Supreme Court will decide that question.  The Supreme Court accepted review on the same issue four years ago in *First American Financial Corp. v. Edwards*, 131 S. Ct. 3022 (June 20, 2011) (granting certiorari on "Question 2 presented by the petition").  A year after granting certiorari, however, the Supreme Court dismissed the appeal "as improvidently granted" without further explanation. 132 S. Ct. 2536, 2537 (2012).  Essendant can

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

offer no assurance the Supreme Court will not do likewise in *Spokeo*.

Second, even if the Supreme Court ultimately holds that something more than a "bare violation" is necessary for Article III standing, this junk fax case would easily qualify. "[U]nsolicited fax advertisements impose costs on *all* recipients, irrespective of ownership and the cost of paper and ink, because such advertisements waste the recipients' time and impede the free flow of commerce." *American Copper & Brass v. Lake City Indus. Prods., Inc.*, 757 F.3d 540, 544 (6th Cir. 2014) (emphasis supplied). Literally every circuit court to consider the issue agrees. *See Imhoff Invest., L.L.C. v. Alfoccino, Inc.,* 792 F.3d 627, 633 (6th Cir. 2015) (plaintiff suffered injury by reason of fax transmissions); *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1251 (11th Cir. 2015) (TCPA plaintiff had "Article III standing sufficient to satisfy the injury requirement" because it "suffered a concrete and personalized injury in the form of the occupation of its fax machine for the period of time required for the electronic transmission of the data"); *Ira Holtzman, C.P.A., & Assocs., Ltd. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013). *Spokeo* will not remotely address the inherent injuries caused by junk fax transmissions because it is not a TCPA junk fax case.[11]

Third, there is no question Plaintiffs suffered concrete injuries at the hands of Essendant. Essendant's junk faxes forced Plaintiffs to print the faxes, consuming their toner and paper, and to spend administrative dealing with the faxes. (David Brunjes Decl. ¶ 8; Diana Brunjes Decl. ¶ 7.) These injuries are more than sufficient for standing. "In a class action, standing is satisfied if at least one named plaintiff meets the requirements. Thus we consider only whether at least one named plaintiff satisfies the standing requirements…" *Bates v. United Parcel Serv., Inc.*, 511 F.3d

---

[11] The cases cited by Essendant in which *Spokeo* stays have been granted are distinguishable. (Dkt. No. 28, p. 19; *see* Dkt. No. 33, Exs. 11, 13, 18, 19; Dkt. No. 36, Exs. 5, 7.) Like *Spokeo, Larson, Ramirez, Kirchner* and *Syed* were Fair Credit Reporting Act cases. The other cases cited were non-junk fax TCPA cases. Further, the plaintiffs in *Kirchner, Syed* and *Monitronics* stipulated to stays.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

974, 985 (9th Cir. 2007) (en banc); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011) (same).

Not surprisingly, other courts have rejected similar stay requests based on *Spokeo*. In one recent decision, the Middle District of Florida rejected arguments similar to Essendant's, holding that "[t]he grant of certiorari on an issue does not suggest a view on the merits" and there is no way to know "how the Supreme Court is going to decide the issues" on which it granted review. *Speer v. Whole Food Mkt. Grp., Inc.,* No. 8:14-CV-3035-T-26TBM, 2015 WL 2061665, at *1 (M.D. Fla. Apr. 29, 2015). The court decided that "a stay of these proceedings to await a decision from the Supreme Court in *Spokeo* is not warranted," because it had "no way of divining whether the Supreme Court will decide the *Spokeo* case in such a manner as to benefit the Defendant's position with regard to the Plaintiff's lack of standing."

## C.    There Is No Justification to Await FCC Decision on Essendant's Retroactive Waiver Petition

Essendant also requests a stay for as long as it takes the FCC to decide its recently filed waiver petition. As noted earlier, in its October 30 Opt-Out Order, the FCC granted "retroactive waivers" of certain parties for violations of § 64.1200(a)(4)(iv), which requires opt-out notices on fax ads sent to recipients who provided prior express invitation or permission (PEP). The Opt-Out Order does not permit any waiver for, or otherwise affect, fax ads sent *without* PEP. The FCC "emphasize[d] that this waiver does not affect the prohibition against sending unsolicited fax ads, which has remained in effect since its original effective date." Opt-Out Order ¶ 31. Nor did the FCC waive compliance with the opt-out disclosure requirements for non-PEP based faxes. The "similar requirement to include an opt-out notice on fax ads sent pursuant to an established business relationship" continues to be required by the TCPA and FCC rules and regulations. *Id*. ¶ 2, n.2, ¶ 28, n.99.

The Opt-Out Order allowed "similarly situated" parties to petition for waivers

PAYNE & FEARS LLP

ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

-17-

by April 30, 2015.  Opt-Out Order ¶ 2, n.2; ¶ 28, n.99.[12]  The FCC cautioned that "all future waiver requests will be adjudicated on a case-by-case basis" and did not "prejudge the outcome of future waiver requests."  *Id.* ¶ 30, n.102.  The FCC refused to grant blanket future waivers (*id.* ¶ 13), and indicated that only "some" parties would be granted waivers.  *Id.* ¶ 1.

In a petition filed almost three weeks after the FCC's deadline, Essendant asked the FCC to "waive" its violation of the opt-out disclosure requirements for fax ads it purportedly sent with recipients' PEP.[13]  Yet neither in the FCC (Dkt. No. 32-2, 32-9) nor here has Essendant offered evidence that it obtained PEP from any junk fax target, and particularly from Plaintiffs.  Here, Essendant only offers a seven-line paragraph contained in the declaration of Jon Phillips.  (Dkt. No. 30, ¶ 6.)  While Phillips purports to state the results of an "investigation" conducted by Essendant, he does not provide *any* information whatsoever about the investigation.  Phillips does not say what was investigated, how the investigation was conducted, or who conducted it.  Indeed, the declarant does not even state that he was *involved* in the investigation.  These conclusory statements lack personal knowledge and foundation and are inadmissible.  (*See* Dkt. No. 35.)

The FCC has not said when it will decide Essendant's untimely waiver request.  But even when the FCC eventually acts, it will have no practical bearing on this case, for several reasons.  First, the FCC lacks constitutional and statutory authority to

[12]  The FCC stated that "we expect all fax senders to be aware of and in compliance with this requirements [and] [w]e expect parties making similar waiver requests to make every effort to file within six months of the release of this Order," *i.e.,* April 30, 2015.  Opt-Out Order ¶ 27.

[13]  Essendant's only excuse for blowing the April 30 deadline is that the company was sued by Plaintiffs after the deadline.  (*See* Dkt. 32-2, p. 5, n.19.)  This is no excuse.  Essendant is a sophisticated Fortune 500 company that knowingly sent fax advertisements regulated by the TCPA and the FCC (including faxes sent after the Opt-Out Order was issued), and knew or should have known about the April 30 deadline.  Moreover, the FCC expected "all fax senders"—large and small—to be aware of its order and to file any waiver requests by April 30.  The failure to timely file its petition is reason alone why the petition will be denied.  (*See* Dkt. Nos. 36-1, 36-2.)

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

-18-

waive a party's liability in private litigation brought to enforce the TCPA.  Last year the Western District of Michigan held that no matter how the FCC responds to another defendant's waiver petition, the agency could not immunize the defendant from liability for sending junk faxes.  *See Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482 (W.D. Mich. 2014).  The court held that "[i]t would be a fundamental violation of the separation of powers for [the FCC] to 'waive' retroactively the statutory or rule requirements for a particular party in a case or controversy presently proceeding in an Article III court."  *Id*. at 498.  The court observed that "nothing in the waiver—even assuming the FCC ultimately grants it—invalidates the regulation itself" and that "[t]he regulation remains in effect just as it was originally promulgated."  *Id*.  The court concluded that "the FCC cannot use an administrative waiver to eliminate statutory liability in a cause of action; at most, the FCC can choose not to exercise its own enforcement power."  *Id.*  Last month the Northern District of Illinois followed *Stryker* in denying another FCC petitioner's stay request.  *See Fauley v. Heska Corp.*, No. 15 C 2171, 2015 WL 4079189, at *3 (N.D. Ill. July 6, 2015); *see also Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12-22330, 2014 WL 7366255, at *5 (S.D. Fla. Dec. 24, 2014) (questioning whether "the FCC can grant a retroactive waiver that would apply in civil litigation between private parties").

Second, even if the FCC had authority to bestow civil immunity on Essendant, it would be only for *solicited* faxes sent with PEP.  Essendant is being sued for, among other things, sending *unsolicited* faxes sent without PEP.  (Dkt. No. 1, ¶ 30.)

Third, even if the FCC granted Essendant's waiver petition in full, the company would still need to prove that it actually obtained PEP from junk fax recipients.  But Essendant has not demonstrated that it obtained PEP from *any* class member, let alone Plaintiffs.  Courts have uniformly rejected stay requests in these precise circumstances.  *See, e.g., Fauley*, 2015 WL 4079189, at *3 (defendant's potential "receipt of a wavier would not change the scope of the class or resolve the

-19-

issue of consent"); *Simon v. Healthways, Inc.*, No. CV 14-08022 BRO, 2015 WL 1568230, at *4 (C.D. Cal. April 7, 2015) (O'Connell, J.); *True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-CV-02219, 2014 WL 6707594, at *2 (N.D. Cal. Nov. 30, 2014); *Around the World Travel, Inc. v. Unique Vacations, Inc.*, No. 14-cv-12589, 2014 WL 6606953, at *4 (E.D. Mich. Nov. 19, 2014).

Fourth, the motion fails the most basic condition for a stay: A stay would not streamline the issues in the case. Even if Essendant receives a waiver from the FCC, the Court or jury will have to decide whether Essendant obtained recipients' PEP. The discovery needed to decide the case, including on this issue, will be identical no manner what the FCC does in connection with the petition. Whether Essendant obtained consent "requires litigation, not a stay," and "[t]he 'orderly course of justice' will only be served by allowing this case to proceed and trying the issue of consent." *True Health Chiropractic*, 2014 WL 6707594, at *2. Every court to consider the issue agrees. *See Fauley*, 2015 WL 4079189 at *3 (Defendant's "receipt of a waiver would not change the scope of the class or resolve the issue of consent"); *Around the World Travel,* 2014 WL 6606953, at *4 ("Plaintiff is entitled to discovery to determine whether defendant can support its position that it sent faxes with the permission of recipients"); *Knapp-Ellis v. Stellar Recovery, Inc.,* No. 2:13-cv-01967, 2014 WL 5023632, at *3 (W.D. Wash. Oct. 8, 2014) ("a stay will only hinder the parties from discovering the facts and opinions necessary to clarify the contours of the claims and defenses in this case such that the Court, or a jury, may determine whether they are indeed affected by an FCC decision...").

Fifth, staying the case pending potential FCC action would not only fail to streamline issues, it would potentially *add* to them. If Essendant succeeds in obtaining a waiver, it would create yet another class-wide question: whether "the FCC can grant a retroactive waiver that would apply in civil litigation between private parties." *Doctor Diabetic Supply,* 2014 WL 7366255, at *5.

Essendant also invokes the primary jurisdiction doctrine in an attempt to justify

this leg of its stay request.  (Dkt. No. 28 at 30-31.)  But in April Judge Beverly O'Connell rejected this precise argument.  Judge O'Connell held that the primary jurisdiction doctrine does not justify a stay pending FCC decision on a TCPA defendant's waiver petition brought under the Opt-Out Order.  This is true because (1) the PEP issue "is not an issue of first impression" and the "FCC has previously examined this term"; (2) "this is not an issue that requires technical expertise beyond the Court's conventional experience"; and (3) "this is not the type of claim that requires uniformity of administration or the need to establish a national rule." *Simon*, 2015 WL 1568230, at *4.

Literally the *only* precedent cited by Essendant for granting a stay pending a waiver petition under the Opt-Out Order is a minute order entered last December by the Northern District of Illinois in *Senco Brands.*  (Dkt. No. 28 at 22.)   Earlier this month, however, following nine months of FCC inaction on Senco's petition, the court *lifted* the stay and restored the case to active litigation.  (Cordero Decl. ¶ 13; Dkt. No. 36-4, p. 2 (Ex. 4).)  *Senco* hardly helps Essendant here.[14]

## III.   A Stay Would Harm Plaintiffs, the Putative Class and the Public Interest

Although a stay would garner no practical benefit for the case, it would impose unfair burdens on Plaintiffs and the putative class.  Parties "have a strong interest in resolving their claims expeditiously and in vindicating any constitutional or statutory violations to which they may have been subjected." *Melendres v. Maricopa County*, No. 07-CV-02513, 2009 WL 2515618, at *2 (D. Ariz. Aug. 13, 2009).  These interests

---

[14]  Essendant cites another unpublished order entered in *Physicians Healthsource, Inc. v. Masimo,* No. 8:14-cv-00001-JVS-AN (C.D. Cal. May 22, 2014).  (Dkt. No. 28 at 22.)  But this order does not aid Essendant either.  First, liability there depended entirely on the opt-out notice issue.  The class definition required that the faxes "did not display a proper opt-out notice." (*See* Dkt. No. 36-9, p. 6.)  Here, Plaintiffs contend that Essendant *independently* violated the TCPA by sending *unsolicited* fax advertisements.  (Dkt. No. 1, ¶ 30.)  Second, *Masimo* is procedurally distinct because the plaintiff waited two years before filing suit; here Plaintiffs promptly sued.  Third, the stay issued in *Masimo* because of a petition that sought to invalidate the opt-out notice requirements.

PAYNE & FEARS LLP

ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

1    are greater still in private TCPA class action suits, which are "a uniquely effective

2    way to protect a population already besieged by unwanted and aggressive solicitations

3    from persons or companies hawking their products."  *Jay Clogg Realty Group, Inc. v.*

4    *Burger King Corp.,* 298 F.R.D. 304, 309 (D. Md. 2014).  This interest is advanced

5    because the Act was not designed solely to compensate private injuries caused by junk

6    faxes, "but also to address and deter the overall public harm caused by such conduct."

7    *Kaufman v. ACS Sys., Inc.,* 110 Cal. App. 4th 886, 922 (2003).

8         Indeed, a stay would particularly prejudice class members who, like Plaintiffs,

9    did not give PEP.  A stay would unduly burden Plaintiffs and other class members by

10   denying them prompt adjudication of their claims and obtaining compensation.  *See*

11   *Yong v. I.N.S.*, 208 F.3d 1116, 1121 (9th Cir. 2000).  The interests of potentially

12   thousands of persons are at stake.  The delay of monetary compensation supports

13   denial of a stay.  *Central Valley Chrysler-Jeep v Witherspoon*, No. CV F 04-6663,

14   2006 WL 2473663, at *3 (E.D. Cal. Aug. 25, 2006).

15        Second, Plaintiffs' ability to move for class certification would be

16   unreasonably deferred.  Rule 23 requires that class certification be decided "at an

17   early practicable time." Fed. R. Civ. P. 23(c)(1)(A).

18        Third, Essendant seeks a stay of an indefinite duration (*see* pp. 24-25, *infra*.)

19   This significantly increases the danger of prejudice to Plaintiffs and the class,

20   including the ability of witnesses to recall specific events.  *See Siding and Insulation*

21   *Co. v. Beachwood Hair Clinic, Inc.,* No. 11-cv-01074, 2011 WL 4005396, at *2

22   (N.D. Ohio Sept. 8, 2011) (denying stay of TCPA case because "[p]hysical evidence

23   could be lost, and the memories of those with pertinent information will degrade

24   while the parties await a Supreme Court opinion.").  Essendant doesn't mention

25   what—if *anything*—it has done to preserve evidence, even though Plaintiffs raised

26   serious concerns about this issue in both Local Rule 7-3 meetings.  (*See* Cordero

27   Decl. ¶¶ 6, 9, 11.)

28

## IV.   Essendant Would Suffer No Hardship or Inequity in Being Required to Defend Its Junk Faxing

As the Ninth Circuit has stressed, "*Landis* cautions that 'if there is even a fair possibility that the stay…will work damage to someone else,' the party seeking the stay 'must make out a clear case of hardship or inequity.'" *Lockyer*, 398 F.3d at 1112 (quoting *Landis*, 299 U.S. at 255; ellipsis provided by Ninth Circuit). Here, Essendant does not come close to meeting this rigorous burden. In sharp contrast to the unfairness of forcing Plaintiffs and the putative class to stand down for some indeterminate period, the "burden" on Essendant of moving forward is nonexistent. The company asserts that having to "undergo the expense and time of class discovery" would "result in great harm to Defendants." (Dkt. No. 28 at 28, 32.) Essendant offers no specifics concerning this supposed "burden," let alone admissible evidence to support it.[15] But even if this naked assertion were supported by admissible evidence, it would not make out a "clear case of hardship or inequity." Essendant's "hardship" argument has long been rejected by the Ninth Circuit. As the court has repeatedly stressed, "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer*, 398 F.3d at 1112. And circuit district courts have consistently rejected as insufficient complaints about discovery and expenditure of resources.[16]

---

[15] Essendant offers *no* declarations or evidence of any kind to support its naked assertion about the "burden" it will encounter to defend its junk fax campaigns. Local Rule 7-6 requires that "[f]actual contentions involved in any motion…shall be presented, heard, and determined upon declarations and other written evidence (including documents, photographs, deposition excerpts, etc.) alone…" Local R. 7-6 (eff. 6/1/15).

[16] *See Zillow*, 2013 WL 594300, at *3 ("having to engage in discovery, expend resources, and incur substantial litigation fees…is not enough"); *Imagenetix, Inc. v. GNC Parent, LLC,* No. 12-CV-0089-H (RBB), 2012 WL 2923314, at *4 (S.D. Cal. July 18, 2012) (need to defend claims does not demonstrate hardship or inequity); *Beijing Tong Ren Tang (USA), Corp. v. TRT USA Corp.*, No. C-09-00882RMW, 2009 WL 5108578, at *2 (N.D. Cal. Dec. 18, 2009) ("financially burdensome" litigation insufficient); *Dister v. Apple-Bay E., Inc.*, No. C 07-01377SBA, 2007 WL 4045429, at *3 (N.D. Cal. Nov. 15, 2007) (parties can't complain about expenditure of litigation resources); *Central Valley Chrysler-Jeep,* 2006 WL 2473663, at *3 ("the (footnote continued)

-23-

PAYNE & FEARS LLP

ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

Of course the entire premise of Essendant's hardship argument—that hypothetical Supreme Court decisions in *Campbell-Ewald* and *Spokeo*, and FCC decision on its petition could render unnecessary all discovery—is false.  Neither *Campbell-Ewald* or *Spokeo* will enable Essendant to avoid class-wide accountability, and nothing the FCC does in response to Essendant's waiver request will alter the discovery needs of this case.

## V.   Essendant Cannot Make the "Strong Showing" Required to Justify an Indefinite Stay

In this case Essendant faces a heightened burden of persuasion because it proposes an indefinite stay, lacking a specific deadline.  "A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time."  *Leyva*, 593 F.2d at 864.  It follows that "stays should not be indefinite in nature."  *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066-67 (9th Cir. 2007) (stays lacking a specific end date are indefinite).

That is precisely what Essendant proposes here.  Essendant has no clue how long it will take the FCC to act on its waiver petition.  The FCC has an unenviable track record of taking years to decide TCPA petitions.  *See Jamison v. First Credit Servs., Inc.,* 290 F.R.D. 92, 100 (N.D. Ill. 2013) (denying stay request by TCPA defendant because of indeterminate time for FCC action, finding that "the potential delay in this case more than outweighs any theoretical benefit that might be achieved with an FCC resolution of this issue"); *accord, Knapp-Ellis*, 2014 WL 5023632, at *3 (stating, in denying a stay, that "[i]t is widely understood that the delay encountered in waiting for [FCC] agency decision-making is often lengthy"); *Alvarado v. Bay Area Credit Serv., LLC*, No. 14-cv-02549, 2015 WL 224950, at *2 (N.D. Cal. Jan. 16, 2015) (denying stay because "there is no indication that a decision from the FCC is

_____

hardship that defending a lawsuit entails is irrelevant to deciding whether to grant a *Landis* stay").

-24-

1   coming any time soon"). Months of FCC inaction on a waiver petition by another

2   junk fax defendant is precisely why Judge John Blakey vacated a stay earlier this

3   month in the *Senco* case. (*See* p. 21, *supra*.)

4         And even after the FCC rules, there is the potential for further delay pending

5   resolution of any appeals of that action. The FCC's Opt-Out Order itself is the

6   subject of multiple consolidated appeals in the District of Columbia Circuit. (No. 14-

7   1234 (lead), 14-1235, 14-1239, 14-1243, 14-1270, 14-1279, 14-1292, 14-1293, 14-

8   1294, 14-1295, 14-1297, 14-1299, 14-1302.) Any final decision of the effect of the

9   FCC actions that might remotely aid Essendant could be literally years away.

### Conclusion

11        There is no reasonably foreseeable set of circumstances that would produce

12  any benefit from grounding this case to a halt indefinitely. A stay would accomplish

13  nothing but delay in the resolution of this class case, impacting not only Plaintiffs,

14  potentially thousands of class members, and the public. Essendant's motion should

15  be denied to enable the case to progress toward a "just, speedy, and inexpensive

16  determination." FED. R. CIV. P. 1.

18  DATED: August 26, 2015            Payne & Fears LLP
                                                and
19                                      Law Offices of Scott Z. Zimmermann

21                                  By: /s/ C. Darryl Cordero

22                                        C. Darryl Cordero
23                                      Attorneys for Plaintiffs Craftwood II, Inc.,
                                        and Craftwood Lumber Company,
24                                      and for all others similarly situated

27  08-26-15 - United - Plaintiff's AMENDED Memo of PsAs in Opposition to Defendants' Motion for St.docx

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911